## DAVIS, Agent, v. MORRIS. (No. 1169–5148.)

Commission of Appeals of Texas, Section A.
Feb. 6, 1929.

J. B. Dibrell, Jr., of Coleman, and Terry, Cavin & Mills, of Galveston, and Lewis Jeffrey, of McMahon, for plaintiff in error.

Critz & Woodward, of Coleman, for defendant in error.

NICKELS, J. Judgment for the carriers in suit brought by Morris for recovery of damages for death of certain cattle and injuries to other cattle (included in a. "shipment" from Hugo, Okl., to Coleman, Tex.) was reversed, and cause was remanded by the Court of Civil Appeals. 3 S.W.(2d) 109. Reversal was made upon error in the charge on burden of proof and upon error in admission of a "notation" found on one of the bills of lading under which the shipment moved. Writ of error was allowed upon a petition denying error (alternatively, harmful error) in the respect first mentioned and denying error of any kind in the other respect.

1. We quote so much of the charge given as is deemed appropriate for illustration of the grounds upon which the first question is to be decided:

"Gentlemen of the Jury: In this case the plaintiff sues the defendant for damages alleged to have been occasioned to a shipment of cattle * * * alleged to have been shipped from Hugo, Oklahoma, to Fort Worth, Texas, and reconsigned to· Brownwood, Texas and Coleman, Texas. * * *" (The next paragraph embodies a definition of "negligence.")

"Bearing in mind the foregoing instructions, you will answer the following questions. * * *:

"Question No. 1: Were any of the cattle in question killed en route between Hugo, Oklahoma, and Coleman, Texas, or injured in such a way, that they died as the result of such injuries, as alleged in plaintiff's petition? * * *

"If you have answered the foregoing question 'Yes,' then you will answer the following question:

"Question No. 2: How many of said cattle were so killed or injured in such a way as to die from result of such injuries?

"If you have answered question No. 1 'Yes,' then you will answer the following question:

"Question No. 3: Was the death of such cattle, and the injuries causing such death, if any, the result of negligence of the defendant?

"If you have answered Question No. 3 in the negative then you need not answer the following questions. If you have answered questions 1 and 2 'Yes,' then you will answer the following questions.

"Question No. 4: (Inquiring about 'market value' of the 'cattle so killed or injured').

"Question No. 5: Were any of said cattle other than those referred to in Interrogatory No. 1, injured while en route between Hugo, Oklahoma and Coleman, by the negligence, if any, of the defendant? * * *

"The burden of proof is upon the plaintiff to establish the material allegations in his petition by a preponderance of the evidence."

In the "petition" to which general reference was made in "Question No. 1," and in the instruction on burden of proof, it is charged that some of the cattle shipped were killed, or died, and others were injured through the carriers' negligence. And "negligence" was averred in (a) "rough-handling," or (b) lack of "reasonable dispatch," or (c) both in contributive conjunction.

Answer of any kind to any question (submitted) subsequent to the first was by the instructions conditioned upon an affirmative answer to "Question No. 1."

An. affirmative answer to "Question No. 1" would presuppose a determination · by the jurors either (a) that both "rough-handling" and lack of "reasonable dispatch" were proved by plaintiff by a "preponderance of the evidence," or (b) that one of such averments was thus proved and the other was not "material." Manifestly, the latter determination would be one of law.

That three cows were "down" in each of two cars and ten were "dead or about dead" in another car when the "shipment" left

Madill, Okl., and that several more were "down" and some more "dead" in those and other cars when the "shipment" left Sherman, Tex., are "facts" established without substantial contradiction (if not without any contradiction whatever). Such is the purport of testimony introduced by the carriers. Between Hugo, Okl. (point of origin), and Madill, there was much "rough-handling," according to the testimony of McCandless and Foster (agents who rode the train as "caretakers" for Morris); on this point their testimony is not contradicted. The "rough-handling" continued between Madill and Sherman, etc., according to McCandless and Foster; on this point (probably) they were contradicted. But, according to McCandless, the train made a"fair quick run from Hugo, to Sherman"—"they were handled rough and jerked around, the sudden stopping and starting was the only complaint." There is testimony tending to show an unusually fast "run" from Sherman to Forth Worth, with testimony of "rough-handling," etc.

Manifestly, then, the jurors well may have regarded the allegation of "rough-handling" as established and the allegation of lack of "reasonable dispatch" as not established by Morris "by a preponderance of the evidence." The state of proof then being considered, exemplified in the last preceding paragraph above, indicated that they probably did so regard the matter, and this, with the negative answer given "Question No. 1," indicates probability of belief that lack of "reasonable dispatch" was an averment which was "material" within the meaning of the charge on burden of proof, and which, therefore, had to be supported by Morris by a "preponderance of the evidence" before an affirmative answer could be given.

If good faith in the jurors be (as must be done) assumed, their confusion of mind is patent. Having given a negative answer to "Question No. 1" and despite instructions (in that event) not to consider other questions, the jurors proceeded to answer questions three and five—each of which was answered "No." And, it must be held, the charge on burden of proof made substantial contribution to that confusion, for (as illustrated) such is the probability. Analogy of situation presented to the jury in this case to the situations presented in the cases of Levy v. Jarrett (Tex. Civ. App.) 198 S. W. 333; Sanger v. First Nat. Bank (Tex. Civ. App.) 170 S. W. 1087; Texas Baptist University v. Patton (Tex. Civ. App.) 145 S. W. 1063; T. P. & L. Co. v. Bristow (Tex. Civ. App.) 213 S. W. 702; Rick Furniture Co. v. Smith (Tex. Civ. App.) 202 S. W. 99; and Pen O Tex Oil & Leasehold Co. v. Fairchild (Tex. Civ. App.) 252 S. W. 847, does not exist so as to bring the charge within commendation of those opinions.

Even in case of a general charge, the judge is required "to distinctly separate questions of law from questions of fact" (article 2185, R. S. 1925); and, except for "explanations and definitions of legal terms" (article 2189, R. S. 1925), a matter of law has no place in a charge submitting special issues, for "issues of fact" is that which is to be submitted "to the jury" (article 2184, R. S. 1925). The specific objection considered by us is that the charge on burden of proof (contrary to the law of special issues) "left to the jury determination of what constituted material allegations in the petition." Restated: The objection (which we sustain) is that a question of law was submitted. We do not mean to imply immunity of the charge to other objections; whether it is thus subject is a question which is immaterial.

■ 2. The cattle moved from Hugo under two bills of lading, one having reference to six carloads and one having reference to five carloads. In each the cars in which the cattle were moved are identified.

The bill of lading covering six carloads is signed by McCandless as "shipper" (McCandless was acting for Morris, etc.), and by the carrier by Meffert, its agent at Hugo. It was "witnessed" by one Miles. Diagonally across the body of printed stipulations on the face of the bill appears (in "handwriting"), "1 man in charge 36 hr. release Southern Cattle. Cattle very very weak 1 cow cripple left front leg."

In the printed stipulations there is provision for unloading, feeding, watering, etc., upon request of "shipper or attendant in charge." The "handwriting" notation, "1 man in charge 36 hr. release," has reference, we assume, to the matter of the printed stipulation mentioned as affected by relevant statutory and commission regulations. The statement, "Southern Cattle," has reference, we assume, to the matter of quarantine regulations, etc.

Morris introduced this bill of lading (with its notations) in evidence, except that he did not introduce this notation: "Cattle very very weak 1 cow cripple left front leg." Subsequently the carriers introduced the bill with all notations over objections by Morris that the notation ("Cattle very very weak 1 cow cripple left front leg") was "hearsay and not shown to be the act of the plaintiff or any one authorized to act for him in reference to said notation." The bill of exceptions approved by the court recites: "* * * Said notation * * * was not in the handwriting of G. B. McCandless."

McCandless was agent of the shipper at the time the bill of lading was signed in duplicate, and delivered (i. e., one copy) to him. Apparently, the subject-matter and form of the bill lay within the scope of his authority. M., K. & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518. Whatever was on or in the paper when signed and delivered then rep-

resented the conjoint declarations of the shipper and carrier. Perforce, the bill of lading as it existed when signed was the "act of the plaintiff" or of some one "authorized to act for him," and is not "hearsay." Admissibility of the notation then is, primarily, a question of fact (that is to say, a question of law to be answered by the trial judge upon his own examination of relevant facts then before him), and (on the objections heretofore made) has reference to presence or absence of the notation at time the bill of lading was signed. In the present state of the record we doubt existence of warrant for saying, as a matter of law, that the (presumed) finding of the trial judge that the notation was on the bill of lading when signed is without support in evidence then before him; but, since the cause is to be remanded and the evidence (on this point) in the new trial may not, and likely will not be, comparable to that in the present record, determination of the question is not important.

3. We recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.