## WALSH v. SCHINGLER. (No. 1790.)

Court of Civil Appeals of Texas. Beaumont. March 8, 1929.

Rehearing Denied March 13, 1929.

O. J. Todd, C. S. Pipkin, and Jack M. Moore, all of Beaumont, for appellant.

C. A. Lord and Jno. D. McCall, both of Beaumont, for appellee.

O'QUINN, J. Walsh sued Schingler to recover double the amount of usurious interest alleged by him to have been paid to Schingler on money loaned him by Schingler to finance the sale of certain automobiles for which he (Walsh) was agent. Recovery in the sum of $4,762.22 was sought; said amount being double the amount of interest alleged by plaintiff to have been paid by him to defendant. The petition of plaintiff is very lengthy, with many details and alternative pleas. In view of the disposition we make of the case, we will not set them out, but say they were amply sufficient to state plaintiff's cause of action.

Defendant, Schingler, answered by general demurrer, general denial, and specially denied that he ever loaned plaintiff any money or that there was any agreement between them that plaintiff was to pay interest on any sum of money involved in the transactions between plaintiff and defendant, denied that he ever advanced any money to plaintiff to pay any drafts covering the shipment of automobiles, but asserted, to the contrary, that he did pay for all of the automobiles in question and did pay the drafts drawn by the manufacturers covering the prices of said automobiles, and in good faith became the owner of said automobiles, taking bills of sale

to same; that plaintiff had no right, title, or claim in or to said automobiles until he paid defendant the cost price of same with 5 per cent. of the cost price of each automobile, which was the agreed profit defendant was to receive. Defendant admitted making the contracts with plaintiff pleaded by plaintiff, and asserted that same were bills of sale to and absolute conveyances to him of said automobiles and not mortgages, as alleged by plaintiff. He also denied that the bills of sale were subterfuges made for the purpose of concealing the usurious nature of said contracts, but that they truly expressed the intentions of the parties in all respects, and denied that there was ever any agreement, oral or written, whereby plaintiff was to pay defendant any borrowed money or any interest, but that the money paid to defendant by plaintiff was for the purchase price of automobiles which were the property of defendant, and 5 per cent. profit on the purchase price of same.

The case was tried to a jury, and, upon the conclusion of the evidence, both plaintiff and defendant moved for an instructed verdict, which was denied, and the case submitted to the jury upon the following special issues:

"Special Issue Number One (1): Do you find from the evidence that the various contracts made by the plaintiff and the defendant were contracts for the borrowing and repayment of money?" to which the jury answered, "No."

"Special Issue Number Two (2): Do you find from the evidence that the contracts between the plaintiff and the defendant were for the bona fide sale of the automobiles by the plaintiff to the defendant?" to which the jury answered, "Yes."

"Special Issue Number Three (3): Do you find from the evidence that the contracts made between the plaintiff and the defendant were subterfuges intended to evade the statute against usury?" to which the jury answered, "No."

"Special Issue Number Four (4): What amount of money was paid by the plaintiff to the defendant in excess of the amount of money paid by the defendant for the drafts and invoices for the automobiles?" to which the jury answered, "$2,371.11."

"Special Issue Number Five (5): Was the amount mentioned in Special Issue Number Four (4), received from the plaintiff by the defendant as interest on money borrowed by the plaintiff from the defendant?" to which the jury answered, "No."

"Special Issue No. 2 requested by plaintiff: Do you find from a preponderance of the evidence that the cars in question were conveyed to the defendant, Schingler, for the purpose of securing him in the return of the money advanced by him at the time the bills of lading were taken from the bank?" to which the jury answered, "No."

Upon the answers of the jury, judgment was entered for defendant. Motion for a new trial was overruled, and the case is before us on appeal.

In his charge to the jury, the court defined "interest," "legal interest," "conventional interest," "usury," and instructed the jury that "the burden of proof is upon the plaintiff to establish the material allegations of his petition by a preponderance of the evidence."

Plaintiff excepted to the court's charge for various reasons not necessary to state. All his propositions urging error in the court's not sustaining his exceptions to the form and contents of the special issues are overruled. The issues were necessary and correctly stated.

As the case must be reversed and remanded for another trial, it would be improper for us to discuss appellant's propositions challenging the sufficiency of the evidence to establish the jury's findings.

Appellant's first five propositions complain that the court erred in charging the jury, over his objections, that the burden of proof was upon the plaintiff to establish the material allegations of his petition by a preponderance of the evidence. It is contended that this charge was error because: (a) It was a general charge on the burden of proof and therefore improper in the submission of causes on special issues; (b) that it imposed upon the jury the duty of determining what were the material allegations of plaintiff's petition; and (c) that it was fundamentally an erroneous statement of the law on the burden of proof in such cases.

It seems to be well settled that this charge was error. The charge was clearly a general charge, and imposed upon the jury the duty of determining the material facts relied upon by the plaintiff for a recovery. Such a charge might reasonably have been understood by the jury as instructing them to ascertain whether or not the plaintiff was entitled to recover under the pleadings and proof and then to answer the special issues submitted in accordance with such finding. Missouri-Kansas-Texas Railway Co. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106 (writ refused); Morris v. Davis (Tex. Civ. App.) 3 S.W.(2d) 109; Wootton v. Jones (Tex. Civ. App.) 286 S. W. 688.

In Morris v. Davis, supra, the charge on the burden of proof is identical with the charge in the instant case. In holding the charge was error, the court said:

"One objection to this charge was that it left the jury to determine what were the material allegations in the petition. The objection should have been sustained. There are numerous decisions by the appellate courts on this question, and they all hold that where a case is submitted on special issues, it is error to give a general charge which leaves it to the jury to find and determine whether a

plaintiff has established by a preponderance of the evidence the material allegations of his petition. These decisions are based upon two grounds or reasons: First, because it is error to impose upon the jury the duty of determining what are the material allegations of the petition; and, second, that it is in effect a general charge instructing the jury to ascertain whether plaintiff is entitled to recover under the pleadings and proof, and therefore in violation of Article 2189, R. S. 1925, which provides that where a case is submitted upon special issues only such succinct explanations and definitions as are necessary to make clear the issues submitted should be given."

A writ of error was granted in this case, but in a very recent opinion (not yet [officially] published) by section A of the Commission of Appeals, approved by the Supreme Court [13 S.W.(2d) 63] the judgment of the Court of Civil Appeals was affirmed, in which the holding that the charge was error was specifically sustained.

■ Appellant's proposition that the court erred in his charge in not defining the word "subterfuge" is overruled. We think the word is of such common usage and ordinary meaning that it can be readily understood by the average juror.

Because of the error discussed, the judgment is reversed, and the cause remanded.