## GULF, C. & S. F. RY. CO. v. HOUSTON.

### No. 7608.

Court of Civil Appeals of Texas. Austin.

Dec. 23, 1931.

Bowers & Bowers, of Caldwell, and Terry, Cavin & Mills, of Galveston, for appellant.

W. M. Hilliard, of Caldwell, and W. A. Morrison, of Cameron, for appellee.

McCLENDON, C. J.

Appeal from a judgment upon a special issue verdict in favor of appellee in a suit for compensatory damages for the alleged negli-

gent death of appellee's husband, Phillip Houston, who was an employee of appellant.

The facts in broad outline follow:

September 11, 1928, Phillip Houston, while a member of a section gang engaged in repairing appellant's railway line near the town of Lyons, in Burleson county, was struck on the right shoulder by a double coil spring, weighing about 29 pounds, which had been projected from a passing freight train for a distance of some fifteen feet from the track where Phillip Houston was standing waiting for the train to pass. Houston was knocked down by the blow, the immediate result of which was a slight abrasion of the skin and a severe contusion of adjacent parts of his body. He was carried to his home in Lyons, put to bed, where appellant's local surgeon treated the wound with mercurochrome solution, bandaged it, and gave him a hypodermic to relieve his pain. The local surgeon made no complete diagnosis, and advised sending Houston to the "Santa Fé" Hospital at Temple, of which Dr. Gobar was chief physician. This was done, Houston reaching the hospital early in the morning of September 12th. He remained in the hospital seven days (September 12-18), returned to his home, and later returned to the hospital for three days (September 26-28). On October 3d he executed a full release of all liability in consideration of $50 then paid. On October 7th he returned to the hospital and was finally discharged. Re-employment on his old section was denied him on the ground (so he was told) of his relationship (brother-in-law) to the section foreman. Later he was given employment on another section. In the meantime he worked for brief periods in a tie plant and on a farm, pulling corn and driving a team. During the night of November 29th he was taken suddenly ill, and was treated by appellant's local surgeon at Somerville, where he was then living, until December 5th, when he was again taken to the "Santa Fé Hospital" at Temple. He died there December 28, 1928.

The defenses pleaded by appellant were: (1) Assumption of risk under Federal Employer's Liability Act; (2) unavoidable accident; (3) contributory negligence on Houston's part; (4) the release as a full discharge from liability; (5) that his death was the result of typhoid fever or some other disease, and not of the injury.

In avoidance of the release, appellee pleaded failure of consideration, in that the release was procured upon a promise afterwards breached, that Houston would be given back his old job; and fraud in the procurement of the release in two respects: (1) Misrepresentations regarding the extent of his injuries; and (2) misrepresentation by appellant's claim agent, Newcom, who procured the release, that it was merely a receipt for Houston's lost time, and did not cover any claim for his injuries.

The special issues submitted and the jury's answers follow:

"1. Was the deceased Philip Houston struck and injured by a spring flying from beneath one of defendant's train of cars in Burleson County, Texas, on or about the 12th day of September, 1928?" Answer: "Yes."

"2. Did the deceased, Philip Houston, sign and deliver to the said Newcom, for the defendant, the release as it now appears in evidence before you?" Answer: "Yes."

"3. Were the injuries received by the deceased Philip Houston fully developed at the time he signed, if he did sign, said release?" Answer: "No."

"4. Was said release, when signed, if signed intended by both parties to be a full and complete settlement and discharge of all liabilities of the defendant, to the deceased?" Answer: "No."

"5. Did Dr. Gobar at the Santa Fé Hospital at Temple, Texas, while deceased Philip Houston was in said hospital, or was being treated there, the first time, represent to said deceased that the injuries he had received by being struck by said spring, if he was so struck, were slight, and that he would soon recover from said injuries?" Answer: "Yes."

"6. Did said deceased Philip Houston believe said representation of said Dr. Gobar, if he made such?" Answer: "Yes."

"7. Do you find and believe from the evidence that at the time said deceased, Philip Houston, signed his name to said release, he had been misled by the statements of the agent, Newcom?" Answer: "Yes."

"8. Was part of the consideration for the signing of said release a promise or obligation of the defendant to reinstate the deceased in his old position on the section at Lyons?" Answer: "Yes."

"9. If you have answered the foregoing question in the affirmative, then state if said promise was a material inducement to said deceased to sign said release?" Answer: "Yes."

"10. At the time deceased Philip Houston was struck by said spring, if he was so struck, did he suffer great pain physically, before his death, as a result of such injuries received, if any?" Answer: "Yes."

"11. Was the defendant guilty of negligence, as that term has been hereinbefore defined to you, in using said car or transporting the same, from which said spring came at the time, and under the circumstances struck the deceased, if he was struck?" Answer: "Yes."

"12. Was the death of Philip Houston the direct and proximate cause of the injuries received by him, if any, by being struck by said spring, if he was so struck?" Answer: "Yes."

"13. Was the death of Philip Houston di-

rectly and wholly occasioned as the result of typhoid fever?" Answer: "No."

"14. Were the diseases which you may find said Philip Houston was afflicted with, while in said hospital, if any, reasonably and materially attributable to the weakened condition, if any, of the said Philip Houston, from having received the injury, if any, from said spring?" Answer: "Yes."

"15. What would be a reasonable compensation to the deceased, Philip Houston, for the conscious pain and suffering occasioned to him, if any, before his death, as a direct and proximate result of said injuries, if any, —had he lived?" Answer: "$1,000.00."

"16. What amount of money, if paid now all at one time, would be a reasonable compensation to his surviving wife and his two minor children, for the pecuniary loss sustained by them by reason of his death?" Answer: "$5,000.00."

"If you answer special issue No. 15, in the affirmative, and if you answer Special Issue No. 16, in the affirmative, by assessing damages under each question, then you will add the amounts so found, if any, together and apportion the total amount in your answers, as follows:

"To Mrs. Nellie Houston, the sum of $2,000.00 if any.

"To Dorris Houston, the sum of $2,000.00 if any.

"To Omie Houston, the sum of $2,000.00 if any.

"In apportioning the amounts, if any, as above required, you will make such apportionment as you may think proper and appropriate, under the circumstances in evidence."

Appellant contends that there should have been a directed verdict in its favor on the ground that the evidence did not support one or more or all of the following essentials to appellee's recovery: (1) Actionable negligence on appellant's part; (2) that Houston's death was proximately caused by his injuries; (3) failure of consideration or fraud in connection with the release.

 We have carefully studied the entire statement of facts from the viewpoint of these assignments, and have reached the conclusion that the evidence was sufficient to take the case to the jury on each of these issues, except that of failure of consideration of the release, which subject will be discussed below. The evidence is quite voluminous. It presents sharp conflicts in testimony between witnesses for the respective parties, in many places is obscure and difficult to follow; yet, on the whole, we think it will support recovery. Since we are reversing the judgment for errors in the court's charge, we pretermit discussion of the evidence as it relates to appellant's above contentions.

 Upon the burden of proof the court charged: "You are instructed that the burden of proof is upon the plaintiff to prove her cause of action by a preponderance of the evidence."

This charge was objected to, (a) because it "entirely fails to instruct the jury what is necessary or essential to be proven by the plaintiff to entitle her to a recovery"; and (b) because the term "cause of action" was not defined "in order that the jury may properly understand the same and what is meant thereby."

We sustain the objections.

Charges of like purport in special issue trials have been repeatedly condemned as presenting reversible error. Wootton v. Jones (Tex. Civ. App.) 286 S. W. 680, 688; Ry. v. Thomason (Tex. Civ. App.) 3 S.W.(2d) 106; Davis v. Morris (Tex. Com. App.) 13 S. W.(2d) 63; Telegraph Co. v. Rutledge (Tex. Com. App.) 15 S.W.(2d) 210, 211; Walsh v. Schingler (Tex. Civ. App.) 14 S.W.(2d) 873; Motor Co. v. Wilson (Tex. Civ. App.) 14 S. W.(2d) 867; Ry. v. Bufkin (Tex. Civ. App.) 19 S.W.(2d) 343.

 Appellee contends that the error was cured in the next succeeding paragraph of the charge which contained the following: "You will decide the hereinafter submitted special issues from a preponderance of the evidence."

This exact point was decided adversely to appellee's contention in the Rutledge Case, above.

But, aside from this, the latter instruction, if it had any meaning at all as a guide to the jury, could only mean that the affirmative of each issue must be proved by a preponderance of evidence. Given this meaning, it was affirmatively erroneous as to special issue No. 3, as to which the burden was on the plaintiff to establish the negative. This issue had relation to the pleading in appellee's supplemental petition in avoidance of the release on the ground of fraud; the pleading being that there were internal injuries that had not developed at the time the release was signed, and the seriousness of which were minimized and concealed from him. The answer "No" to this issue, under the above construction of the court's charge, meant that the jury did not find from a preponderance of the evidence that the injuries had fully developed; whereas the burden was on appellee to show by preponderance of evidence that the injuries had not fully developed. An erroneous charge cannot cure another erroneous charge.

It may not be amiss to advert briefly to the rationale of the rule condemning the charge complained of.

The question upon whom the burden of proof lies to establish a particular issue is one of law to be determined by the court.

The question whether the quantum of proof or evidence required to establish such issue has been met is one of fact, which lies exclusively in the province of the jury.

These principles are succinctly stated by Chief Justice Stayton in the following quotation from Stooksbury v. Swan, 85 Tex. 563, at page 566, 22 S. W. 963, 964:

"In cases in which evidence is introduced by the respective parties, tending to prove and to disprove the issues of fact involved in a cause, occasion does not arise for declaration upon whom the burden of proof rests; for the question then becomes merely one of preponderance of evidence, * * * whether this be direct or circumstantial.

"In such cases a charge upon the burden of proof is more likely to mislead than to give a jury a correct view of their duties."

The opinion was written in 1893, with reference to a general charge, before our special issue verdict statute was passed.

If such a charge is calculated to mislead the jury when a case is submitted upon a general charge in which the jury are instructed upon the law of the case, how much more misleading is it calculated to be when the case is submitted upon special issues in which the law of the case is withheld from the jury and they are not instructed upon nor "presumed to know, what facts are essential to be found to entitle the plaintiff to recover." Rutledge Case above, citing Duron v. Iron Works (Tex. Com. App.) 9 S.W.(2d) 1104.

It would be well to hold in mind that in a special issue charge it is only proper, in this regard, to instruct the jury as to the quantum of proof essential to establish the several special issues; in other words, to tell them "where, and not upon whom, the burden of establishing by a preponderance of the evidence lies." Wootton v. Jones, above.

Error in this regard may always be avoided by so framing each issue as to instruct the jury therein where the preponderance of evidence is required. This method is not suggested as exclusive; but it is simple, direct, and readily understandable—qualities which commend it where the object is to obtain accurate views of the jury upon the specific fact issues submitted, untrammeled by considerations of their bearing upon the ultimate rights of the parties.

■ This suit was brought by appellee in her capacity as administratrix of the estate of Phillip Houston; but no proof of such administration was offered. Appellant contends that, since the suit was under the Federal Employers' Liability Act (45 USCA §§ 51–59), and it was therefore necessary to take out administration to maintain the suit (Ry. v. Wulf, 226 U. S. 570, 33 S. Ct. 135, 57 L. Ed. 355), the evidence does not support the judgment in the absence of such proof. There being no verified denial of plaintiff's right to sue in the capacity she alleged, proof of such right was dispensed with under R. S. art. 2010 subd. 3. Richardson v. Allison (Tex. Com. App.) 213 S. W. 252; Davis v. White (Tex. Civ. App.) 207 S. W. 679.

The remaining questions presented by appellant, which may become material upon another trial, relate to special issues submitted and refused. In so far as objections to issues as being without support in the evidence relate to the subjects already discussed, we will not take further note of them.

Special issues 2 to 9, inclusive, have relation to appellant's plea of fraud and failure of consideration in the execution of the release.

■ Appellant's objections to special issue 2 were to the effect that there was no issue in the pleading or proof questioning execution of the release. These objections were well taken, and should have been sustained. The only issues raised regarding the release arose under appellant's pleas in confession and avoidance based upon fraud and failure of consideration. In so far as the present appeal is concerned, the error is harmless, but should be avoided upon another trial.

Appellee contends that the purpose of the question was only to determine a disputed issue of fact whether a clause in the release in Phillip Houston's handwriting was inserted before or after it was signed. As above stated, neither the pleadings nor the evidence raise any issue regarding the execution of the release in its exact language as introduced in evidence. Whether the clause in question was inserted before or after Houston's act of affixing his signature is immaterial to the validity of its execution. It could only be material in relation to the issue of fraud, as to which it was but evidentiary, and should not have been submitted, as its answer could have no material bearing in determining the proper judgment to be rendered.

■ Special issues 4, 8, and 9 should not have been given because in direct contradiction of the terms of the release which expressly provided that it was a full settlement and discharge of all liability of appellant, and that no promise or representation was or had been made relative to future employment. If the release was fairly made, its terms precluded inquiry regarding the questions presented in these issues. If it was procured by fraud, these questions became immaterial other than as evidentiary.

■ Special issue 7 was subject to two objections: (1) In assuming that Newcom made material false statements to Houston; and (2) in not specifying what statements were referred to. Appellee pleaded that Newcom represented to Houston that the release was only a receipt for the time he had lost and did

not cover damages for his injuries; that Houston was ignorant and confiding, relied upon these statements, and did not read or understand the release as a settlement of his claim. The evidence in this regard was sharply conflicting in each particular.

■ With reference to this and the other special issues relating to fraud, the issues should be so framed as to establish or negate the essential elements of fraud which are: A material false statement, made knowingly or recklessly as regards its falsity, for the purpose of being acted upon and actually being acted upon by the defrauded party to his detriment.

■ The objection to special issue 10 is to the word "great" before "pain," on the ground that it "is on the weight of the evidence in that it stresses and calls undue attention to and places undue importance on the extent or amount of deceased's pain." That Houston did suffer pain as the result of his injuries was conclusively proved. The extent of his pain was sharply controverted. Whether submitting the issue in this form should be held prejudicial as being calculated to influence the jury's action, we find unnecessary to decide. Any answer to the question would furnish no guide to the judge in rendering a proper judgment, and we suggest that the entire question be eliminated upon another trial.

■ Special issue 11 was objected to because too general, and "because it does not confine the jury to the negligence complained of in plaintiff's petition." The allegations of negligence follow: "The plaintiff further charges that the said freight train was negligently operated and that the cars therein were negligently inspected and that by the exercise of ordinary care the said defendant could have learned and could have ascertained the dangerous condition of said spring and could have had it securely placed and fastened in said car so that it would not have sprung from beneath the same, and that the defendant was guilty of negligence in failing and refusing to inspect said car and inspect said train and in operating said train at the time and under the circumstances and in the manner in which it was operated because the said defendant knew, or by the exercise of ordinary care could have known, that said section hands and plaintiff's husband would be standing and be required to stand, near said right-of-way as and where it was usual and customary for all other section hands to stand under similar circumstances, and while said car and said train was being negligently operated and moved with great rapidity along and near the place where plaintiff's said husband was expected and could have been expected to be standing at the time and at the place in the manner in which he was so standing at the time he was so struck and injured as aforesaid, and that all of his said injuries and his death were produced, occasioned and brought about and directly resulted from the said negligent acts and omissions of said defendant as herein charged, and occasioned the damages herein shown."

There was no direct evidence as to what caused the spring to become detached. It was one of a series of springs employed to support the body of freight cars, for which appliances designed to hold them in place during the operation of trains are provided. It was also in evidence that defects in the spring or in these appliances, which would admit of its becoming detached, are discoverable by the usual inspection given freight trains in passing division and terminal points. The instrumentality was entirely in the possession and under the control of appellant, and proof of negligence rests in the doctrine of res ipsa loquitur. Appellee having alleged a specific act of negligence in inspection, we are of the view that under the decisons in this state the inquiry should have been directed to that issue. Davis v. Castile (Tex. Com. App.) 257 S. W. 870. Appellant requested a special issue correctly submitting this issue.

■ We sustain appellant's thirty-second proposition complaining of the trial court's refusal to submit the issue of assumed risk. The suit comes under the Federal Employers' Liability Act (45 USCA §§ 51–59), as to which the defense of assumption of risk is available to the same extent as at common law, except where defendant has violated some statute for the servant's protection, or where the injury is due to negligence of a fellow servant. Seaboard Air Line v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1 Ann. Cas. 1915B, 475; 39 C. J. p. 689, § 892. The evidence, we think, clearly raised the issues tendered and refused.

Appellee asserts that this point was not raised "in any of the fifty different questions sought to be raised by the Amended Motion for New Trial, or in any of the 18 additional assignments filed after the trial." The refused issues are copied verbatim in assignments of error numbered 37 and 38, on pages 86 and 87 of appellant's brief, which are exact copies of assignments of error of the same numbers in appellant's amended motion for new trial (Tr. 73 and 74).

■ The court gave the following special charge at appellee's request: "You are instructed that if you find for the plaintiff any amount under Special Issue No. 16, then you are instructed that you will take into consideration in estimating such damage the age of the deceased, the time he would be expected to live, his disposition, his earning capacity, and also what amount of pecuniary aid his surviving wife might reasonably expect to receive from him so long as she remains unmarried, and what pecuniary aid his two minor children might reasonably expect to receive from him until they become 21 years of age."

Appellant objected to this issue because: (1) It indicated to the jury that finding damages under issue 16 would amount to a verdict for plaintiff; and (2) Houston's disposition could not properly be considered in arriving at an answer to said issue.

The first objection was good, but the error was probably harmless. We suggest eliminating "for the plaintiff" upon another trial.

Houston's disposition was not an element of damage for which recovery might be had. In so far, however, as it tended to prove a recoverable amount based upon pecuniary contribution to his wife and children, and nurture, care, admonition, and moral and mental training of the latter, it was entitled to evidentiary consideration. The specific objection we think not well taken.

A number of other points are raised in appellant's brief, but some of them will probably not arise upon another trial, and the others are manifestly without merit, and their discussion would serve no useful purpose.

The trial court's judgment is reversed, and the cause remanded for a new trial.

Reversed and remanded.