## BRENAN v. EUBANK.

### No. 7801.

Court of Civil Appeals of Texas. Austin.
Jan. 4, 1933.

Robert L. Russell, Sr., of Brownwood, and Barry Miller and George Sergeant, both of Dallas, for appellant.

Woodruff & Holloway, of Brownwood, for appellee.

McCLENDON, C. J.

On February 14, 1929, Brenan and Eubank contracted in writing for the exchange of 44 shares of stock in the Brownwood State Bank, held by Eubank, for a building in Brownwood, owned by Brenan, on the following terms: "Price to be paid for the stock $5,280.00. Price of building to be $4,000.00. The building to be delivered to J. B. Eubank free of incumbrance, and to pay to J. B. Eubank Twelve Hundred Eighty ($1280.00) cash upon consummation of sale: The said J. B. Eubank agrees to deliver to John Bren-

an the bank stock free of all incumbrance." On the following day the transaction was consummated in the following manner: Eubank indorsed to Brenan a certificate for 40 shares of stock, which was surrendered to the bank and a new certificate issued to Brenan, which he indorsed to Eubank and attached as collateral security to a note, dated February 15, 1929, in favor of Eubank for $2,225, due six months after date, with 8 per cent. interest. The items included in this note were: The $1,280 difference in the agreed price of the exchanged properties; $725 principal, and $20 earned interest on a vendor's lien note outstanding against the building, which Eubank assumed; and $200 real estate agent's commission to Posey (5 per cent. on $4,000). Brenan paid Eubank interest on the note for the first two six-month periods. The bank was taken over by the state banking commissioner in June, 1930; and shortly thereafter Brenan brought this suit against Eubank, Posey, the agent, Walker, president of the bank, and the banking commissioner; to cancel the contract and note, and recover back his building, and in the alternative for $10,000 damages. Brenan dismissed as to Posey, Walker, and the banking commissioner, and the court entered judgment in favor of Eubank upon a directed verdict.

Brenan has appealed upon three assignments of error, urging the following propositions:

(1) The trial judge was disqualified because he was a stockholder and director in the bank.

(2) The trial judge abused his discretion in allowing, after evidence had been offered by both sides, a trial amendment to Eubank's answer, to the effect that the trade only contemplated 40 shares of stock and that the figure "44" was inserted in the contract by mutual mistake.

(3) The evidence upon the merits of the case presented fact issues, and a directed verdict was therefore not warranted.

■ We overrule the first proposition on two grounds:

(1) The record does not show that the trial judge was a stockholder or director, or had any interest in the bank. The bill of exception upon this issue does not disclose the ground upon which disqualification was urged. The only record evidence of such disqualification is its unverified assertion in Brenan's motion for new trial, manifestly insufficient. City of Austin v. Nalle, 85 Tex. 520, 550, 22 S. W. 668, 960.

(2) The pleadings do not assert any liability against the bank, and, when the commissioner was voluntarily dismissed from the suit, whatever disqualification may have theretofore existed was removed.

■■ The trial court has a wide discretion in allowing amendments to pleadings at any time even after verdict. This discretion is not subject to review except when the record shows an abuse, to constitute which some prejudice must be shown by the complaining party. This is elementary. It was not shown or claimed that the amendment operated as a surprise to Brenan. On the contrary, the pleading upon which Eubank went to trial alleged that the agreement sued upon "did not provide for the sale of forty-four (44) shares of stock, but intended and provided for the sale by this defendant to plaintiff of forty (40) shares." The evidence showed that when the bank was organized the stock subscribers paid in $110 per share, $10 of which went to surplus, and that this fact caused the confusion in the number stated in the contract. Moreover Brenan himself testified:

"Q. On the 15th (Feb., 1929) certificate No. 88 (40 shares) was issued to you? A. Yes, sir, and there was another one of four shares. Four shares of stock had been paid to Mr. Eubank as a dividend and he included that four shares of stock.

"Q. That was issued to you? A. Yes, sir.

"Q. And then you endorsed it over to Mr. Eubank as collateral? A. Yes, sir."

■ The record conclusively shows that the contract was not carried out according to its terms. Brenan was to pay $1,280 in cash. This he did not have. The building was to be free of incumbrance. It was incumbered with a vendor's lien for $725 plus earned interest. To meet this situation Eubank took Brenan's note with the bank stock as collateral. At that time, February 15, 1929, Brenan knew exactly what stock Eubank had and executed the necessary indorsements to transfer it to Eubank as collateral for his note. There is no dispute in the evidence upon this point. The trial amendment merely conformed the pleadings to the uncontroverted facts. Clearly there was no abuse of judicial discretion in allowing it. The cited case of Johnson v. Sunshine Oil Corp'n, 111 Tex. 578, 243 S. W. 455, is manifestly not in point. The other cases cited are those in which the trial court refused to allow the amendment, and it was held not an abuse of discretion. In such case the burden is upon the party offering the amendment to show that he had a legal right to amend at the time and under the existing circumstances. Here the amendment was allowed, and the burden was on the other party to show prejudice, which not only was not done, but prejudice was negatived by the record.

Upon appellant's third proposition we adopt, for the purposes of this appeal, the following statement from appellant's brief as to the ground upon which he sought recovery, although we doubt whether his pleadings will support the statement: "This suit was one for rescission and cancellation of a con-

tract alleged to have been procured by fraudulent representations of the defendants as to the value of the Bank stock given in exchange for the land."

The only evidence of representation as to value was that the stock was worth the contract price, $5,280, and that Walker for the bank agreed to loan as much as 70 per cent. of its face value with the stock as collateral, which he later declined to do on the ground that state banks were prohibited by law from lending money upon the security of their own stock.

The burden of proof was upon appellant to establish prima facie every element essential to his cause of action based upon fraud. These elements were: "A material false statement, made knowingly or recklessly as regards its falsity, for the purpose of being acted upon and actually being acted upon by the defrauded party to his detriment." Gulf, C. & S. F. Ry. Co. v. Houston (Tex. Civ. App.) 45 S.W.(2d) 771, at page 776(9).

In at least one of these essential elements, the falsity of the representation as to the value of the stock, the evidence wholly fails. The only evidence of value of the stock on February 14, 1929, was to the effect that on that date its book value was the contract price of approximately 135 per cent. (actually 132 per cent.) of the par value, and that there had previously been a 10 per cent. dividend.

Appellant asserts: "It was a question of fact for the jury as to whether a Bank, insolvent in June 1930, could have been solvent with stock worth 100 cents to 135 cents on the dollar in February 1929." This we think is a non sequitur.

Even in normal times there is no presumption that a bank which is closed by the department for some undisclosed reason was insolvent sixteen months prior to the time of closing.

Independently of this we think we may take judicial notice of general economic conditions; that the stock market crash which heralded the present "depression" occurred in October, 1929; that in its wake numerous banks and financial institutions all over the country, which had theretofore been not only abundantly solvent, but in a flourishing financial condition, failed; that this was especially true of the smaller banks (that in question was capitalized for $50,000).

The record is entirely silent as to the bank's assets and liabilities at the time it was closed in June, 1930. Equally silent is the record as to why the bank was closed, whether from some irregularity committed by the directors, or that its then liquid assets were insufficient to meet the requirements of the banking laws.

We think a mere statement of appellant's position in the light of current history carries its own refutation, and that further comment would be superfluous.

We stated above that we doubted whether appellant's pleadings sufficiently raised the issue of fraud urged in the above statement from the brief, which is appellant's interpretation of his own pleadings and the only ground of error urged upon the merits of the case. These pleadings are quite voluminous, and are embellished with a plethora of verbiage. If we were called upon to analyze them, we would say at most they present two grounds of relief: (1) That Eubank did not deliver to Brenan any bank stock; and (2) that Brenan failed to get the bank loan of 70 per cent. par value of the stock as represented to him.

The first of these grounds is negatived by Brenan's own admissions. True he did not retain the stock in his possession or custody. In fact he may never have had the manual possession of it. But he accepted it as tendered to him, indorsed and hypothecated it to Eubank. All of this was voluntary on his part. In this there was no misrepresentation of fact, no fraud, no breach of contract even.

The second ground will be discussed below.

If we turn to the evidence, we find the gravamen of his complaint, as deduced from his own testimony, to be, in substance, as follows: His only reason for selling the building was to raise funds for an investment he was contemplating. Posey told him that the bank would lend 70 per cent. of the par value of the stock. Together they went to see Walker, who confirmed this statement. This was on February 14, 1929, the day the contract was executed. The next morning he went to the bank, and the entire transaction was consummated as above detailed. At that time Walker confirmed his previous assurance regarding the bank loan. That afternoon he called at the bank to negotiate the loan, and Walker declined for the reason above stated, showing him a copy of the inhibitory statute. He then demanded of Walker the return of his deed and note, and was told that all papers were in Eubank's hands.

Then was the time for him to bring his suit for rescission of the contract, instead of waiting sixteen months, and until after the bank had closed its doors. In the interim Eubank had paid Posey $200 commission on behalf of Brenan; had discharged the vendor's lien on the building; had had the building in his possession collecting the rentals; had lost whatever opportunity he might otherwise have had to dispose of his bank stock to advantage. Upon this aspect of his case Brenan knew every fact on the afternoon of

February 15, 1929, that he knew in June, 1930.

Rescission is an alternative equitable remedy, and must be exercised with reasonable promptness. R. R. Com. v. Rau (Tex. Civ. App.) 45 S.W.(2d) 413, at page 417(11).

If we should treat the suit as one for damages for fraud or breach of contract, the evidence furnishes no basis for recovery.

Viewing the case from every standpoint, and indulging every presumption which a most liberal interpretation of the record will warrant favorably to appellant, we are unable to find any basis of recovery which the record will support.

The trial court's judgment is affirmed.

Affirmed.