### THURMOND et al. v. DAVIS.

#### No. 5098.

Court of Civil Appeals of Texas. Amarillo.
Jan. 15, 1940.

Rehearing Denied Feb. 19, 1940.

Sanders & Scott, Howard F. Saunders, and A. P. Smith, all of Amarillo, and J. B. Clark, of Shamrock, for appellants.

M. Reynolds, of Shamrock, and Cummings & Johnson, of Fort Worth, for appellee.

FOLLEY, Justice.

This suit was filed by the appellants, Flora M. Thurmond and her husband, I. C. Thurmond, against the appellee, Champ Davis, upon three promissory notes executed by the appellee on May 1, 1936, aggregating the sum of $9,200 and for foreclosure of a deed of trust lien executed by the appellee upon four tracts of land in Wheeler County, Texas, to secure the payment of said notes.

The appellee admitted the execution of the notes and deed of trust, alleged that such notes were in renewal and extension of a note in the sum of $8,000 dated December 1, 1934 executed by him in renewal of two other promissory notes theretofore executed by him for certain shares of stock in the Guaranty State Bank of Texola, Oklahoma.

The appellee further alleged that the appellant I. C. Thurmond was engaged in the banking business; that Thurmond owned stock in the Guaranty State Bank of Texola and other banking institutions; that I. C. Thurmond and Flora M. Thurmond were husband and wife; that at all times during which the appellee dealt with I. C. Thurmond the latter knew that the Guaranty State Bank of Texola was in a failing and insolvent condition; that Thurmond, acting for himself and as agent for his wife, represented to the appellee that such bank was a solvent institution and that the stock in the same was of a value above par; that such representations were false; that Thurmond knew they were false and made the same with the intention of deceiving the appellee; that the appellee relied upon such representation and was induced thereby to purchase stock in such bank and to execute the notes therefor above mentioned; that the $8,000 note was hypothecated by Thurmond to the First National Bank of Kansas City, Missouri, to secure certain indebtedness owed to it by Thurmond; that on May 1, 1936 the appellants, I. C. Thurmond and wife, paid said debt to the First National Bank of Kansas City after a suit had been filed by the bank against the appellee and I. C. Thurmond and that the said $8,000 note was thereupon renewed by the appellee on May 1, 1936 by his execution of the three notes sued upon herein which were payable to Flora M. Thurmond; that while said note for $8,000 was in the hands of the Kansas City bank such debt was enforceable against the appellee in favor of the bank because the bank was an innocent holder for value, but that upon payment to the bank by the appellants of the indebtedness owed by them to the bank and upon the renewal of the indebtedness by the appellee in favor of the appellants the same remained tainted with all the fraud alleged in the original transaction in the purchase

of the bank's stock of the Texola bank; that at the time the appellee renewed the indebtedness on May 1, 1936, and at all times prior thereto, he was ignorant of the fraud perpetrated upon him; and that there was no consideration for the execution of any of the notes above mentioned.

The cause was submitted to a jury and its findings were substantially as follows: (1) that Flora M. Thurmond authorized I. C. Thurmond to negotiate with Champ Davis and act for her in procuring the notes and mortgages sued upon in this case; (2) that at the time the appellee bought the bank stock I. C. Thurmond represented to him that said stock was well worth the money and that the securities in said bank were good; (3) that such representations were false; (4) that Champ Davis relied upon such representations; (5) that I. C. Thurmond knew such representations were false; (6) that except for such representations Champ Davis would not have executed the note and mortgage dated December 1, 1934; (7) that the money paid to take up the note of December 1, 1934, by check executed by Flora M. Thurmond was the community property of I. C. Thurmond and Flora M. Thurmond; (8) that Champ Davis first learned that the above representations were false on or about November 15, 1938; (9) that at the time Champ Davis purchased the stock in the Guaranty State Bank of Texola, Oklahoma, it had no value; and (10) that I. C. Thurmond intended that Champ Davis should rely upon said representations. Upon such verdict the trial court rendered judgment for the appellee.

The appellants at the close of the testimony filed a motion for an instructed verdict which was overruled by the court. After the above verdict was returned and before judgment was rendered thereon, the appellants filed a motion for judgment non obstante veredicto which was also overruled by the court. The insufficiency of the testimony to substantiate the appellee's defense of fraud formed the basis for each of these motions. For reversal of the judgment herein the appellants assign as error the action of the trial court in refusing to direct a verdict for the appellants and in failing to render judgment non obstante veredicto in their favor.

The appellee's only defense to this action is the alleged fraud upon the part of I. C. Thurmond in the sale of the shares of bank stock to the appellee and the failure of consideration by reason of the alleged insolvency of the bank at the time the stock was sold to him. The evidence with reference to the various transactions upon which the alleged defenses are predicated is very uncertain. The appellee was about eighty years old at the time of the trial in December, 1938. The alleged fraudulent transactions occurred in 1933 or 1934. The testimony of the appellee upon the issue of fraud is very unsatisfactory, which fact, no doubt, was due in part to his advanced years. Nor does the evidence as a whole clearly reveal the various details in connection with the sale of the stock. Therefore, the basic facts which we find in this case necessarily must be from our deductions from what we deem is a fair analysis of the record as a whole.

In the year 1933 I. C. Thurmond was the owner of 130 shares of the capital stock of the Guaranty State Bank of Texola, Oklahoma. These shares were of the par value of $100. The bank was capitalized at $25,000. Thurmond was then president of the bank, a director and its chief stockholder. In the latter part of 1933, or the early part of 1934, at least before February 6, 1934, the appellee purchased ten shares of the Thurmond stock and was made a director of the bank. On February 6, 1934, at a directors' meeting in which Davis was present and participated in the proceedings, Thurmond resigned as president of the bank and T. P. Higgins, another stockholder and officer of the bank, was elected president. Davis signed the minutes of this meeting as a director of the bank.

Thereafter, the exact date not being clearly shown, but some time in the early part of 1934, Davis purchased fifty-five more shares of the Thurmond stock. For his indebtedness for this stock (whether for all of it or only part of it the record does not show) Davis executed a note for $8,000, which was later renewed and divided into two notes, one in the sum of $3,500 and the other in the sum of $4,500. The first $8,000 note just mentioned and the other two notes for $3,500 and $4,500 respectively were not introduced in evidence, but the various witnesses, including the appellee, testified in regard to them. The indebtedness evidenced by such notes was secured by a deed of trust upon certain of the lands involved in this controversy but such deed of trust was not introduced in evidence and the contents thereof

were not revealed. On or about November 5, 1934, the Guaranty State Bank of Texola was removed from Texola to Clinton, Oklahoma, the latter city being in the same county with Texola. A new charter was issued to the stockholders by the State of Oklahoma and the capital stock of the new bank was increased to $50,000. Champ Davis was shown by the amended articles of incorporation to have been one of the incorporators and owner of fifty shares in the new institution, however, the testimony does not disclose the manner in which he obtained these fifty shares. We therefore do not know and the record does not disclose whether the sixty-five shares in the original bank at Texola were transferred by agreement of the stockholders of the new bank and merged into the fifty shares of the new bank or whether the appellee purchased outright the fifty shares in the new institution at Clinton. The testimony does not show what became of the sixty-five shares in the original bank at Texola. The only shares of stock which were introduced in evidence were the shares in the new bank at Clinton and the two certificates introduced showed Davis to have been the owner of sixty-five shares in the new bank instead of fifty shares as recited by the amended articles of incorporation. The testimony does show that the Clinton bank was closed in April 1935, presumably insolvent, however, the testimony in that respect was very indefinite. There was testimony to the effect that the appellee was compelled to pay a $6,500 assessment in connection with shares of bank stock he had bought, but as to whether such assessment was made upon the shares of the Texola bank or the Clinton bank, the record is entirely silent.

On December 1, 1934, after the bank had been moved from Texola to Clinton on or about November 5, 1934, Davis executed a new note for $8,000 in favor of I. C. Thurmond, such note having a notation on it as follows: "For bank stock at Texola, Okla.". The appellee in his testimony denied that this $8,000 note was a renewal note of the former indebtedness for the bank stock, but in his pleadings he alleged that it was a renewal of the former indebtedness, and we think the other evidence in the case conclusively shows such to be the case. On December 1, 1934 Davis also executed a deed of trust upon certain of the lands involved herein, however, this deed of trust was not introduced in evidence and its contents were not otherwise disclosed. The $8,000 note and the deed of trust was by Thurmond placed in the First National Bank of Kansas City, Missouri, as collateral security for indebtedness such bank held against Thurmond. Thereafter, in 1936, the Kansas City Bank filed a suit against Davis in the District Court of the United States upon the indebtedness represented by the $8,000 note of the date of December 1, 1934. The appellant Flora M. Thurmond thereupon paid the Kansas City bank the sum of $8,000 by a check on her bank account in the First National Bank of Shamrock, Texas, said check containing a notation "For: Champ Davis Note", and the Kansas City bank then transferred to her the note and deed of trust lien held by it as collateral security. On May 1, 1936, after such transfer of the $8,000 note by the Kansas City bank, the appellee renewed the indebtedness due upon the $8,000 note of December 1, 1934 by his execution of the three notes herein sued upon in the respective sums of $1,200, $3,000 and $5,000, totaling $9,200, which latter amount included the interest accrued on the indebtedness. These three notes were payable to Flora M. Thurmond and bore interest from date at the rate of eight per cent per annum. At the same time, in order to secure this renewed indebtedness, the appellee executed a deed of trust in favor of Mrs. Thurmond upon the following lands in Wheeler County, Texas: section 99 in Block 13; section 3 in Block A-7; section 18 in Block A-7; and the southeast fourth of section 21 in Block A-7, all located by virtue of the H. & G. N. Railway Company Survey.

▆ It is our opinion that the appellee has wholly failed to establish his defense of fraud in the sale of the stock or his defense of failure of consideration. As above stated the appellee alleged that at the time he purchased the stock Thurmond represented to him that the Texola bank was a solvent institution and that the stock in the same was of a value above par; that such representations were false; and that relying upon said fraudulent representations he purchased the stock. The testimony reveals that I. C. Thurmond, in company with T. P. Higgins and H. T. Doss, the latter also being a stockholder in the Texola bank, visited the appellee at his ranch home in Wheeler County, Texas, about the time the stock was sold to Davis. This was the occasion upon which the appellee contends the alleged fraudulent representations were made to him. Higgins

did not testify in the trial of the case. Thurmond and Doss did testify. Both of these witnesses denied that any statements were made by anyone present as to the value of the stock of the Guaranty State Bank of Texola. The only testimony on this issue came from the appellee himself and he first testified that Thurmond did not say that the bank stock was "worth the money" but merely stated that his brother Oscar Thurmond at Clinton was worth $2,000,000 and that it would not be long until he (I. C. Thurmond) would be worth that much. The next day upon being re-called to the witness stand the appellee gave the following testimony: "Thurmond came out there and says, 'I came out here to sell you some bank stock', and I says, 'Mr. Thurmond, I am in no condition to buy bank stock, I haven't got any money', and he says, 'The bank is in good condition, and the stock is well worth the money.'" It was evidently upon this testimony that the jury made the above finding in regard to the misrepresentations. Granting that we are bound by this testimony and the jury's finding thereon, still there was no competent testimony to show that such statement was not true.

Only two witnesses testified as to the solvency of the bank in question. The appellant I. C. Thurmond stated that the bank at Texola did not fail but was removed to Clinton after he had severed all his connections with the bank. The other witness was Earl Francis. At the time of the trial Francis lived in Beckham County, Oklahoma, was a commissioner of such county and sheriff-elect to have taken such latter office on January 1, 1939. In the year 1934 and prior thereto he was cashier of the Texola bank and remained in such capacity until the bank was moved to Clinton. His testimony was that the Texola bank did not "go broke" at any time he was connected with it and that at the time it was moved to Clinton it was, in his opinion, a solvent institution. There was no testimony offered as to the assets and liabilities generally of the bank or whether or not the assets were sufficient to pay the total liabilities of the bank. Nor was there any testimony to the effect that such bank was at any time "unable to pay its debts in the ordinary or usual course of its business". Turkey State Bank et al. v. Estelline State Bank, Tex.Com.App., 272 S.W. 775, 776; Brenan v. Eubank, Tex.Civ.App., 56 S.W. 2d 513. The only testimony offered by the appellee on this issue was from three customers of the Texola bank, Lee Jones, Ray Potts and J. A. Bradley. Each of these witnesses testified respectively that he was indebted to the bank and to secure such indebtedness each respectively executed chattel mortgages in favor of the bank upon certain livestock. The total indebtedness of the three witnesses was shown to have been about $2,000. Each of these witnesses' testimony was further to the effect that after each had delivered the mortgage to the bank that additional property was added in the respective mortgages. Other than these securities no other testimony was offered by the appellee as to the assets or liabilities of the bank in question. In our opinion this testimony fell far short of proving that the bank stock was not worth the money or that the bank was not a solvent institution. At most it could only show that three of the "securities of the bank" were possibly not "good". In this connection it should be stated that there were no allegations in appellee's pleadings to the effect that Thurmond represented to Davis that the "securities in said bank were good" or that he made any representation at all in regard to the bank's securities. Nor was there any testimony offered that such representations were made. Moreover, H. T. Doss testified without contradiction that the Texola bank paid a dividend to the stockholders at the time he and Champ Davis were directors of such bank. Doss stated that he received a payment of $100 upon his ten shares of stock, which was a ten percent dividend upon the par value of such stock. We think it would be presumed that a bank in failing circumstances or in an insolvent condition would not and could not pay a ten per cent dividend to its stockholders. It is elementary that to constitute actionable fraud it must appear, among other things, that the alleged representations upon which the fraud is predicated were false. Wilson v. Jones, Tex.Com.App., 45 S.W.2d 572; Panhandle & Santa Fe Ry. Co. v. O'Neal, Tex.Civ. App., 119 S.W.2d 1077, writ refused. This burden the appellee has wholly failed to discharge.

The appellee has not only failed to establish his alleged defense of fraud but he has also failed to show that there was no consideration passing to him in the sale of the stock and in the subsequent renewals of the notes executed therefor. The hiatus in the proof of the falsity of the alleged representations in regard to the value of the bank stock also defeats the appellee's de-

fense of failure of consideration. In this connection there was no finding of the jury and no evidence to the effect that but for the alleged representations of Thurmond that Davis would not have executed the three notes and deed of trust herein sued upon of the date of May 1, 1936.

Under the above circumstances it is therefore our opinion that the court erred in failing to instruct a verdict at the conclusion of the evidence and further erred in refusing to render a judgment non obstante veredicto for Mrs. Flora M. Thurmond.

█ This case seems to have been fully developed in the trial court except for the lack of showing upon the part of the appellee to establish his alleged defenses, and this omission is not shown to have been due to any error of the trial court. We know of no rule of law which requires us to reverse and remand this cause in order that the appellee may have a second opportunity to establish his alleged defenses. The cause of the appellants is a liquidated demand the merits of which the appellee does not dispute except by the above asserted defenses which he has wholly failed to establish. We therefore know no sufficient reason why judgment should not be rendered herein in behalf of Mrs. Thurmond.

The judgment of the trial court is reversed and rendered as follows: that the appellant .I. C. Thurmond take nothing against the appellee, Champ Davis; that the appellant Mrs. Flora M. Thurmond recover of and from the appellee, Champ Davis, the sum of $11,140.17, such sum being the principal and interest at eight per cent. per annum on the indebtedness to the date of the judgment, December 20, 1938, with interest on such $11,140.17 from December 20, 1938 until paid at the rate of seven per cent. per annum, the latter rate of interest being the rate prayed for by appellants to be assessed from the date of the judgment; that the appellant Mrs. Flora M. Thurmond recover from the appellee, Champ Davis, the sum of $100.34 with in-terest thereon from December 20, 1938 at the rate of six per cent. per annum until paid, said $100.34 being interest at six per cent. per annum upon past due and unpaid interest; that the appellant Mrs. Flora M. Thurmond recover from the appellee, Champ Davis, the further sum of $1124.05 with interest thereon from December 20, 1938 at the rate of six per cent. per annum until paid, said $1124.05 being ten per cent. attorneys' fees of the amount due on the date of judgment; and that the appellant Mrs. Flora M. Thurmond recover from the appellee, Champ Davis, judgment for foreclosure of her deed of trust lien upon the above described lands as shown by the deed of trust of the date of May 1, 1936 from the appellee to secure the indebtedness herein sued upon, and that order of sale issue as provided by law.

Reversed and rendered.

### On Motion for Rehearing.

█ In his motion for rehearing the appellee seeks to present an issue not heretofore urged and which we therefore did not discuss in our original opinion. He now asserts there is fundamental error in the record because the appellant Mrs. Flora M. Thurmond, being a married woman, failed to show sufficient grounds to authorize her to institute this suit without the joinder of her husband as a real party, it being asserted that her husband, I. C. Thurmond, was only a party pro forma.

Should there be any merit to appellee's position the record does not support his contention in this respect. The only pleadings of the appellants appearing in the transcript were an amended original petition and a supplemental petition. In neither of these does the term "pro forma" appear. On the contrary I. C. Thurmond is referred to as a "plaintiff", and, construing such pleadings as a whole, he appears to be a real party for all purposes necessary for the recovery herein in behalf of Mrs. Thurmond.

The motion for rehearing is overruled.