**GATTEGNO v. THE PARISIAN, Inc., et al.**
**No. 2449.**

Court of Civil Appeals of Texas. El Paso.
Feb. 12, 1931.

Rehearing Denied Feb. 19, 1931.

Kemp & Nagle and Harold Potash, all of El Paso, for appellant.

C. W. Croom, M. V. Ward, and Whitaker & Peticolas, all of El Paso, for appellees.

WALTHALL, J.

The Parisian, a mercantile corporation, brought this suit against I. Gattegno and John T. Muir for damages, and allege, in substance, the following: That plaintiff was in lawful possession under a lease as a tenant of John T. Muir, the owner of the premises, using same as a millinery establishment and place of business, and had been for a year or more before the matters complained of occurred; that I. Gattegno, doing business under the name of Sheldon Jewelry Company, was also a tenant of John T. Muir, in the same building, and was occupying a room adjoining that of plaintiff; that appellee was occupying said rooms under a lease from Muir to Ernest and assigned to appellee; that said lease contained the following covenant: "The space and openings overlooking the corner room from the mezzanine floor shall be enclosed with invisible glass," meaning that the space and opening overlooking the corner room from the mezzanine shall be closed with opaque and translucent glass; that said provision in said lease created in plaintiff an easement for light through said

space and opening overlooking the corner room and the mezzanine floor; that defendant Gattegno unlawfully caused to be laid metal laths and strips, boards, and plaster across the said space and opening, thus shutting out the light, and making plaintiff's rooms and place of business to become dark, with the result that plaintiff's business was thereby damaged; that the nature of plaintiff's business required a well-lighted room in order to display its merchandise; that as a direct result of closing said lights plaintiff's business decreased, stating the gross sum per month, and the aggregate amount for the time stated, which amount represents the total loss of profits, at the end of which time plaintiff sold the business. Plaintiff alleged as further ground of damage that, had said window not been closed, it would have continued to make a like profit to the end of said lease, in 1933; as a third ground for damage, plaintiff sued in the alternative for the diminished value of the lease for the unexpired time.

Gattegno answered by general demurrer, special exceptions, general denial, made Muir a cross-defendant, alleging that he was a lessee of Muir without notice of any provision in plaintiff's lease relative to the opening in said windows as alleged, pleaded an agreement with Muir to the effect that the said windows, or opening at the mezzanine floor, should be covered by a steel and plaster partition, in order to partition said storeroom from the adjoining premises (occupied by plaintiff); that said partition was made with the consent of Muir and his agents, the landlord agreeing to pay for same; that said repairs were necessary for his jewelry business; that said repair was wholly upon his part of the leased premises, the invisible glass being left and in no wise disturbed. Gattegno asked for judgment over against Muir in the event judgment should be against him.

Muir having been dismissed out of the suit, except as to the cross-action, we need not state his answer to the suit.

The case was tried to a jury and submitted upon special issues. The jury found: (1) Gattegno alone, or in connection with others, constructed, or caused to be constructed, the metal lath strips and plaster partitions complained of by plaintiff; (2) that such partitions intercepted the light from the premises rented by plaintiff from Muir; (3) that plaintiff was damaged by reason of such interception of the light; (4) the difference in value between plaintiff's business just before and just after the construction of the partitions complained of was $1,250; (5 and 6) the interception of the light caused plaintiff to lose business and profits in the operation of its store in the sum of $1,250; (7 and 8) the value of plaintiff's lease was diminished by reason of the construction of partitions complained of to the extent of $1,250; (9) the glass partitions complained of were not cov-

ered, or caused to be covered, by Muir or his agents, either alone or in connection with Gattegno; (10) Muir's agent did no more with reference to the construction of the partitions than to pay the cost of the same.

(4) Submitted by Gattegno. Gattegno knew at the time his lease was delivered to him that plaintiff's lease on the adjoining premises contained the provision: "All space above partition wall on North side of said room and openings overlooking the corner room from the mezzanine floor to be enclosed with invisible glass."

Judgment was entered in favor of plaintiff and against defendant Gattegno for $1,250, and against Gattegno's cross-action against Muir.

Gattegno prosecutes this appeal.

### Opinion.

The trial court was not in error in overruling defendant Gattegno's general demurrer.

■ It is the common law of Texas that no prescriptive right to light and air can be acquired by lapse of time. Volume 1, Texas Jurisprudence, p. 712, par. 12.

■ The petition to which the demurrer is directed does not plead a prescriptive right to the light, but a right by express contract in writing. It is clear that the parties to plaintiff's lease by the use of the expression "invisible glass" meant opaque and translucent glass, thus giving plaintiff the right to light as it then existed through the space and openings overlooking the adjoining corner room from the mezzanine floor, and that the court properly so interpreted the lease.

■ As a direct result to plaintiff's business of closing up the space through which plaintiff received light in the rooms of the building occupied by it, the petition stated its loss per month in its business, stating the amount, to which defendant excepted on the ground that such statement of loss was uncertain, vague, and not the true measure of damages, and that the allegations set up duplicate and triplicate measures of damages. The court overruled the exception, and submitted issues 3 and 4 as to whether plaintiff was damaged by shutting off the light and the difference in value of plaintiff's business before and after the construction of the partitions complained of. There was no error in overruling the exception.

■ Appellant submits that "plaintiff showed no right of recovery for the difference between the value of plaintiff's business just before and just after the construction of the partitions complained of"; also that the evidence did not justify the submission of the loss of profits, nor the value of the lease.

We have reviewed the evidence offered. It is too voluminous to state it here. Plaintiff

produced the books kept during the period involved, and spoke at length from its books of the condition of its business before and after the light was shut off up to the time plaintiff ceased to do business at that place. Witness Donaldson said:

"The closing of those windows materially affected the value of the lease. * * * It is hard to say approximately the amount it affected it. * * * In my opinion $3,500.-00 to $4,000.00 should be the fair, reasonable and intrinsic value of the unexpired term of the lease on the Parisian, assuming the windows had never been closed."

The evidence is sufficient to submit to the jury each of the issues submitted. It will be noted, however, that, while the jury found and assessed $1,250 damages on each of the three issues of damage, that is, the difference in the value of plaintiff's business before and after the construction of the partition, the loss of profits, and the diminished value of plaintiff's lease, judgment was entered for $1,250, and there is nothing in the record to indicate for which of the three damages judgment was rendered. Where the evidence shows that any one of the amounts of damage found could be sustained, appellant could have no ground for reversal.

Appellant says the uncontroverted evidence showed that he was an innocent purchaser of his lease for value without notice of any provision in appellee's lease as to the space in question being closed with opaque and translucent glass. The wall between the room occupied by appellant and the rooms occupied by appellee was a common wall of both parties. Appellee was occupying its rooms at the time appellant's lease was made. The glass opening was then in use by appellee, and its purpose in giving light to appellee's rooms was apparent.

We think the circumstances are sufficient to charge appellant with knowledge of the use then made by appellee of the space in the wall covered by glass. Appellee objected to the closing of the space before it was closed. Appellant may not have known of the provision in appellee's lease, but he knew, or should have known, of the purpose of the open space, especially after objection was made to its closing.

Appellant, in his cross-action against Muir, prayed that he have judgment over against Muir. Appellant's lease provides: "It is understood and agreed that the lessor is to make certain improvements to the leased premises at his own expense, and the lease term to begin when the leased space was ready for occupancy."

The evidence shows that appellant had the improvement plans prepared and submitted them to Muir's agent (Mr. Otis Coles) of what he wanted done. Some of the improvements made have nothing to do with the closing of the glass space involved here. The plans show, "close glass openings in south and east walls," the openings involved here. The glass set back from the face of the partition and the partition wall was then built on appellant's side of the wall. The appellant insisted that the glass openings be closed. The plans were shown to Mr. Coles, as testified to by appellant, and that Coles instructed the contractor, Ponsford, to go ahead. Coles testified that he "did not order the closing of those windows above Mrs. Ernest's wall. Mr. Gattegno said those windows should be closed in order for him to get his insurance protection, and I told him if he wished to close them at his own responsibility, he could do so. They were closed. I did not close them and I did not order them closed. * * * I agreed to pay for the closing of the windows." Appellant denied that he was to have the windows closed at his own responsibility.

It is consistent with the other parts of the evidence that Coles saw the plans and directed that the windows be closed. We think it immaterial whether appellant did or did not agree to have the space closed at his own responsibility. The uncontroverted evidence shows that appellant insisted on the space being closed for his own benefit, and had the plans prepared and submitted to Coles, who directed that the work closing the space be done, both knowing that appellee protested against the closing of the space. In closing the space they were joint wrongdoers, and, as to them, our courts hold there is no right of contribution as among themselves as prayed for by appellant. Michie, vol. 4, p. 671, where many cases are cited.

The court was not in error in refusing to submit appellant's tendered charges:

"A. Do you find from the evidence that the glass partitions in question were covered up by the cement and other material under agreement made between John T. Muir and I. Gattegno?"

"B. Was said agreement made at the time or before the delivery of the lease in question to I. Gattegno?"

"C. Under the agreement to cover said glass partition already on the premises was the work done or caused to be done by John T. Muir or his representatives?"

The fourteenth proposition is without merit.

It was not necessary to have charged upon the burden of proof, and it is not always proper to do so where the court submitted the special issues to be found upon a preponderance of the evidence. It was not reversible error, however, to charge generally, and not on any special issue, that the burden of proof was upon the plaintiff before it will be entitled to recover, as submitted by appellant.

It was not error, as already discussed, to charge for defendant Muir as against appellant's cross-action, appellant and Muir being joint wrongdoers in closing the windows, there being no right of contribution as between them.

There is no merit in appellant's seventeenth proposition under the facts presented by the record.

We cannot say that the verdict and judgment is excessive. The jury found three elements of damages each in the amount for which the judgment was rendered.

The case is affirmed.