**GATTEGNO v. THE PARISIAN et al.**

No. 1587—5958.

Commission of Appeals of Texas, Section A.

Nov. 9, 1932.

Kemp & Nagle and Harold Potash, all of El Paso, for plaintiff in error.

C. W. Croom, M. V. Ward, and Whitaker & Peticolas, all of El Paso, for defendants in error.

CRITZ, J.

We adopt the statement of the nature and result of this case as contained in the opinion of the Court of Civil Appeals. It is as follows:

"The Parisian, a mercantile corporation, brought this suit against I. Gattegno and John T. Muir for damages, and allege, in substance, the following: That plaintiff was in lawful possession under a lease as a tenant of John T. Muir, the owner of the premises, using same as a millinery establishment and place of business, and had been for a year or more before the matters complained of occurred; that I. Gattegno, doing business under the name of Sheldon Jewelry Company, was also a tenant of John T. Muir, in the same building, and was occupying a room adjoining that of plaintiff; that appellee was occupying said rooms under a lease from Muir to Ernest and assigned to appellee; that said lease contained the following covenant: 'The space and openings overlooking the corner room from the mezzanine floor shall be enclosed with invisible glass,' meaning that the space and opening overlooking the corner room from the mezzanine shall be closed with opaque and translucent glass; that said provision in said lease created in plaintiff an easement for light through said space and opening overlooking the corner room and the mezzanine floor; that defendant Gattegno unlawfully caused to be laid metal laths and strips, boards, and plaster across the said space and opening, thus shutting out the light, and making plaintiff's rooms and place of business to become dark, with the result that plaintiff's business was thereby damaged; that the nature of plaintiff's business required a well-lighted room in order to display its merchandise; that as a direct result of closing said lights plaintiff's business decreased, stating the gross sum per month, and the aggregate amount for the time stated, which amount represents the total loss of profits, at the end of which time plaintiff sold the business. Plaintiff alleged as further ground of damage that, had said window not been closed, it would have con-

tinued to make a like profit to the end of said lease, in 1933; as a third ground for damage, plaintiff sued in the alternative for the diminished value of the lease for the unexpired time.

"Gattegno answered by general demurrer, special exceptions, general denial, made Muir a cross-defendant, alleging that he was a lessee of Muir without notice of any provision in plaintiff's lease relative to the opening in said windows as alleged, pleaded an agreement with Muir to the effect that the said windows, or opening at the mezzanine floor, should be covered by a steel and plaster partition, in order to partition said storeroom from the adjoining premises (occupied by plaintiff); that said partition was made with the consent of Muir and his agents, the landlord agreeing to pay for same; that said repairs were necessary for his jewelry business; that said repair was wholly upon his part of the leased premises, the invisible glass being left and in no wise disturbed. Gattegno asked for judgment over against Muir in the event judgment should be against him.

"Muir having been dismissed out of the suit, except as to the cross-action, we need not state his answer to the suit.

"The case was tried to a jury and submitted upon special issues. The jury found: (1) Gattegno alone, or in connection with others, constructed, or caused to be constructed, the metal lath strips and plaster partitions complained of by plaintiff; (2) that such partitions intercepted the light from the premises rented by plaintiff from Muir; (3) that plaintiff was damaged by reason of such interception of the light; (4) the difference in value between plaintiff's business just before and just after the construction of the partitions complained of was $1,250; (5 and 6) the interception of the light caused plaintiff to lose business and profits in the operation of its store in the sum of $1,250; (7 and 8) the value of plaintiff's lease was diminished by reason of the construction of partitions complained of to the extent of $1,250; (9) the glass partitions complained of were not covered, or caused to be covered, by Muir or his agents, either alone or in connection with Gattegno; (10) Muir's agent did no more with reference to the construction of the partitions than to pay the cost of the same.

, "(4) Submitted by Gattegno. Gattegno knew at the time his lease was delivered to him that plaintiff's lease on the adjoining premises contained the provision: 'All space above partition wall on North side of said room and 'openings overlooking the corner room from the Mezzanine floor to be enclosed with invisible glass.'

"Judgment was entered in favor of plaintiff and against defendant Gattegno for $1,-250, and against Gattegno's cross-action against Muir."

The judgment of the trial court was in all things affirmed by the Court of Civil Appeals. 35 S.W.(2d) 483. Gattegno brings error.

## Opinion.

██ ██ The trial court submitted the controversy between The Parisian and Gattegno to the jury on special issues. This charge contained the following instruction: "The burden of proof in this case rests upon the plaintiff, and before it will be entitled to recover it must establish the material allegations of its petition by a preponderance of the evidence, that is to say, by the greater weight of credible evidence."

Gattegno objected to the above charge on the ground that it was a general charge and submitted a question of law. We have repeatedly condemned the above charge in cases submitted on special issues. Davis v. Morris (Tex. Com. App.) 13 S.W.(2d) 63; Western U. Tel. & Tel. Co. v. Rutledge (Tex. Com. App.) 15 S.W.(2d) 210, 211; Duron et al. v. Beaumont Iron Works (Tex. Com. App.) 9 S.W.(2d) 1104.

As said by the writer in the Rutledge Case, supra: "The jury are not concerned with, nor are they presumed to know, what facts are essential to be found to entitle the plaintiff to recover. * * * Also the charge as given is clearly a general charge in violation of article 2189, R. C. S. of Texas 1925." The fact that the court so framed each question as to require an affirmative answer to be based upon a preponderance of the evidence does not cure this error or render it harmless. This is evident because the charge is a general one and in effect tells the jury that they may concern themselves with the effect of their answers. This error must result in a reversal and remand of this case.

██ Since the case must be reversed on the matter above discussed, we deem it sufficient to express our views in a general way as to the suit between the defendant Gattegno, and the cross-defendant, Muir. It will be noted from the statement we have made that The Parisian sued Muir and Gattegno for damages arising out of a tort. The plaintiff amended and finally sought judgment against Gattegno only. The defendant Gattegno pleaded over against Muir and prayed that if any recovery should be awarded the plaintiff against him he have judgment over against Muir for a like amount. Also Gattegno's pleadings set out the facts, and contains a prayer for general and equitable relief. The trial court peremptorily instructed a verdict for Muir on this cross-action. The Court of Civil Appeals holds that there was no error in such ruling. This holding is based upon the further holding that under

our law there is no right of contribution between joint wrongdoers. We think this holding of the Court of Civil Appeals is error as applied to this case. Lottman v. Cuilla (Tex. Com. App.) 288 S. W. 123.

The evidence is conclusive that if any wrong was committed against The Parisian by building the wall in question here so as to cut off its light, Gattegno and Muir were joint tort-feasors in the commission thereof. It follows that in so far as the rights of Parisian were involved both defendants were originally jointly liable to it. (Muir has been released by Parisian as will later appear.) The evidence is conflicting on the issue as to whether Muir was an active or a passive wrongdoer as between him and Gattegno. If the testimony of Gattegno is believed as between each other they were both active.

In connection with the above, Gattegno testified: "These windows were not closed by me and under my direction, but Mr. Coles' instructions." Gattegno testified to other facts, which if believed by the jury would justify a fact finding that Muir, through his agent, Coles, was active with Gattegno in the transaction complained of by Parisian. On the other hand, if the testimony of Coles is believed, Muir, as between him and Gattegno, was merely a passive wrongdoer. In this connection Coles testified in substance that he did not agree or undertake to agree to the closing of the windows in question at the time the lease contract with Gattegno was signed. Coles further testified that he did not close the windows or order them closed, but that he agreed for Gattegno to close them at his insistence on his (Gattegno's) own responsibility, but at Muir's cost.

Our statute, article 2212, R. C. S. 1925, provides: "Any person against whom, with one or more others, a judgment is rendered in any suit on an action arising out of, or based on tort, except in causes wherein the right of contribution or of indemnity, or of recovery, over, by and between the defendants is given by statute or exists under the common law, shall, upon payment of said judgment, have a right of action against his co-defendant or co-defendants and may recover from each a sum equal to the proportion of all of the defendants named in said judgment rendered to the whole amount of said judgment. If any of said persons codefendant be insolvent, then recovery may be had in proportion as such defendant or defendants are not insolvent; and the right of recovery over against such insolvent defendant or defendants in judgment shall exist in favor of each defendant in judgment in proportion as he has been caused to pay by reason of such insolvency."

Under the common law the general rule is that there is no right of contribution between defendants who are joint wrongdoers; this rule is subject to the further common-law rule that where some of the defendants are actively guilty of the wrong, and some are merely passively guilty, those who are merely passive have the right to require those who are active to reimburse them for any amount they may have to pay to the plaintiff. A reading of the above statute demonstrates that its evident purpose is to change the common-law rule as applied to joint tort-feasors who are equally guilty as between each other. In other words, under the above statute, where two persons are both actively guilty, or both passively guilty, of a tort which damages a third person, and the third person sues and recovers from them both, jointly and severally, if one pays the entire judgment he is entitled to have his codefendant contribute to him one-half such amount.

It is clear that had The Parisian sued both Gattegno and Muir and asked and obtained a judgment against both of them jointly and severally, and had it been found that both defendants were equally guilty, and had The Parisian then collected such judgment from Gattegno alone, he (Gattegno) would have had the right of contribution to the extent of one-half from Muir. This being the case, we think when The Parisian sued Gattegno alone he had the right to retain Muir in the suit and compel him to contribute the same as though he had been sued by The Parisian. In other words, we do not believe that Gattegno should be defeated of his right of contribution, if any he had, from Muir simply because the plaintiff did not see fit to seek a judgment against Muir. Under this view of the case the trial court erred in delivering a peremptory charge to the jury in favor of Muir on Gattegno's cross-action against him.

Further discussing the above matter, it is obvious that Muir, as a joint wrongdoer with Gattegno, is at least a proper party to the suit in so far as the rights of the plaintiff The Parisian are concerned. (This statement does not take into consideration a release from The Parisian to Muir we shall later discuss.) This being the case, he is also at least a proper party as concerns the right of Gattegno to contribution from him under the provisions of the above statute. Without saying that Muir was a necessary party to the plaintiff's case in the sense that it could not be tried without him, it is obvious that he was certainly a proper party in the sense that Gattegno had the right to have him retained in the case that he might be bound by the plaintiff's judgment in order to enforce his (Gattegno's) statutory right of contribution, as between equal wrongdoers. Lottman v. Cuilla, supra.

Since this case must be retried, there is another matter already referred to by us which is disclosed by the record which we deem it expedient to refer to. We infer from the record before us that originally The Parisian sought recovery from both Gattegno and Muir, and while the suit was pending in the district court The Parisian, with others, executed and delivered to Muir the following instrument in writing:

"Whereas, John T. Muir leased two store-rooms in his building at the corner of Mills and Mesa Streets in the City of El Paso, one to the Sheldon Jewelry Company and one to A. L. Earnest; and

"Whereas, thereafter, A. L. Earnest brought suit against the Sheldon Jewelry Company claiming that it had erected a partition which darkened the store-room leased by Earnest and so injured the business of the said A. L. Earnest; and,

"Whereas, A. L. Earnest desires to sell and dispose of his leasehold of said store-room and has requested the said John T. Muir to consent thereto:

"Now, therefore, in consideration of the premises, the said John T. Muir, acting through his agents, A. P. Coles & Bros., does agree that the said A. L. Earnest may transfer and assign his leasehold to W. C. Porter; this transfer not to affect or change any other provision of said lease; and the said A. L. Earnest does release and discharge the said John T. Muir from any claims or causes of action arising, or which might arise, against the said Muir growing out of the erection and completion of said partition. This release shall not release or discharge any cause of action of the Earnests against Sheldon Jewelry Company, or I. Gattegno.

"Mrs. Gene Earnest, mother of A. L. Earnest, being interested in said leasehold and business, executes this document to evidence her agreement to release John T. Muir from any cause of action she might have.

"Witness our hands, this 26th day of Nov. 1929.

"[Signed]  A. L. Ernest
"[Signed]  Mrs. Gene Ernest
"The Parisian
"Gene Ernest
"By Prest.
"Attest Secy. A. L. Ernest [Signed] [Seal of The Parisian.]"

We further infer from the record that after the execution and delivery of the above instrument The Parisian filed its third amended petition and sought recovery of Gattegno alone.

The legal effect of the above instrument is to release Muir from all liability to The Parisian for all damages resulting from the alleged wrongful acts complained of in this suit. The instrument expressly recites that Gattegno is not released or discharged. The consideration for the above release is Muir's consent, as the landlord, for The Parisian et al. to transfer their lease to one W. C. Porter.

The legal effect of the above release, in the form, under the circumstances, and for the consideration executed and delivered, is not presented to us for review by any direct statement under the assignment under discussion, but it is involved in the assignment complaining of the ruling of the Court of Civil Appeals holding no error was committed by the trial court in giving a peremptory charge for Muir on Gattegno's cross-action against him. For the reasons stated we shall not attempt a ruling which is complete in all events with reference to the legal effect of this release. It is sufficient to say that it cannot affect Gattegno's rights under the statute, article 2212, supra, against Muir. Therefore, if it be found that Gattegno and Muir are both active tort-feasors as between each other, the release having discharged Muir as to all liability to The Parisian, has at least discharged one-half its damages. If it be found that Muir was merely passively guilty of the tort complained of, the release has discharged The Parisian's damages to the extent of the value of the consideration paid therefor. This is true because The Parisian is not entitled to a double recovery for the same wrong. If the value of the consideration for the release is more than one-half the damages suffered by The Parisian, it can in no event have a double recovery, and this is true regardless of any issue of active or passive negligence between Gattegno and Muir.

Finally, as to the controversy between Gattegno and Muir, we wish to say that, while Gattegno has assigned error in this court and in the Court of Civil Appeals touching the giving by the trial court of the peremptory charge in favor of Muir on Gattegno's cross-action against him, he has not presented in this court or in the Court of Civil Appeals either by statement or argument all the matters we have discussed relating thereto. We think, however, that our discussion is proper in order to insure against any error regarding these matters on another trial in the district court.

We recommend that the judgments of the Court of Civil Appeals and of the district court be both reversed, and the cause remanded to the district court for a new trial.

CURETON, C. J.

Judgments of the district court and Court of Civil Appeals both reversed, and cause remanded, as recommended by the Commission of Appeals.

We approve the holdings of the Commission of Appeals on the questions discussed in its opinion.