Santiago **MARTINEZ**, et ux, **Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

No. 85–2087.

United States Court of Appeals, Fifth Circuit.

Jan. 16, 1986.

Bob Wortham, U.S. Atty., William Cornelius, Steven M. Mason, Asst. U.S. Atty., Tyler, Tex., for defendant-appellant.

George Chandler, Lufkin, Tex., James L. Branton, San Antonio, Tex., Claude Welch, Lufkin, Tex., for plaintiffs-appellees.

Before WILL GARWOOD, PATRICK E. HIGGINBOTHAM, and W. EUGENE DAVIS, Circuit Judges.

## OPINION

PATRICK E. HIGGINBOTHAM, Circuit Judge:

We affirm a plaintiff's judgment under the Federal Tort Claims Act except insofar as we must modify the judgment to limit recovery to the amount of the plaintiff's previous administrative claim. We reject plaintiff's argument that the relevant law regarding consideration of inflation in the calculation of damages had changed between the filing of the administrative claim and trial of the lawsuit, and we therefore reject his contention that amendment of the *ad damnum* clause was properly allowed at trial.

### I

Early on the morning of March 27, 1977, Martinez and a group of friends were drinking beer while driving from Diboll, Texas to the Jackson Hill Park swimming area on Sam Rayburn Reservoir. Upon their arrival, Martinez changed his clothes, ran toward the water, and dived into a very shallow portion of the lake. Martinez did not look at, touch, or in any way inspect the water before his dive. He fractured

his neck and has since been severely crippled.

In accord with the procedures set forth in the FTCA, Martinez sought redress in 1979 from the federal agency that maintains the reservoir. His administrative claim for $2 million in damages was denied. In 1983, after filing this lawsuit but before trial, Martinez's complaint was amended to assert damages of $4.5 million. He cites a recent decision of this court as an "intervening fact," 28 U.S.C. § 2675(b), that would justify the amendment.

In the ensuing bench trial, both sides relied on expert witnesses to support their positions on the issue of government negligence in maintaining Jackson Hill Park as a swimming area without signs warning about the dangers of diving. The existence of Martinez's own negligence was not seriously disputed. The district court credited Martinez's expert and found that the accident was caused by the negligence of both the government and Martinez, 65% and 35% respectively. Total damages were fixed at $4,496,128.34; Martinez was awarded 65% of that sum, or $2,922,483.42.

## II

The United States argues that it breached no duty to Martinez because diving into shallow water without first inspecting the lake is obviously dangerous: there is no duty to "warn a person of things he already knows, or of dangerous conditions or activities which are so open and obvious that as a matter of law he will be charged with knowledge and appreciation thereof." *Halepeska v. Callihan Interests, Inc.*, 371 S.W.2d 368, 378 (Tex.1963). Texas, however, has abolished this "no duty" rule. *Parker v. Highland Park, Inc.*, 565 S.W.2d 512, 517 (Tex.1978). The government's argument must therefore fail.

There is little doubt that Martinez was negligent. The United States accordingly cites a dictum in *Brooks v. United States*, 695 F.2d 984, 987 (5th Cir.1983), where we cited *DeWinne v. Allen*, 154 Tex. 316, 277 S.W.2d 95, 98 (1955), for the proposition that a person is not bound under Texas law to foresee the negligence of another. *DeWinne*, which is one of a line of cases dealing mostly with automobile accidents, has not been read broadly enough to absolve the government here. In their most recent discussions of *DeWinne*, the Texas appellate courts have said that "a person is not *in law* required to anticipate negligent or unlawful conduct on the part of another," *Clifton v. Wilson Industries*, 589 S.W.2d 498, 499 (Tex.Civ.App.—Texarkana 1979, writ ref'd n.r.e.) (citations omitted) (emphasis added), and that a person "is not entitled to close his eyes to that which is plainly visible to a person of ordinary prudence similarly situated," *Browning v. Paiz*, 586 S.W.2d 670, 674 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.) (citations omitted). In *DeWinne* itself, a jury verdict was allowed to stand even though it required the defendant to anticipate the plaintiff's negligent conduct. Thus, although Texas law abjures a per se rule requiring a person to anticipate the negligence of another, it does allow a trier of fact to find that a particular defendant should have anticipated the possibility of certain negligent conduct by a particular plaintiff.

■ The testimony of Martinez's expert was found credible by the trial judge, who concluded that both the government and Martinez were negligent. The conclusion that the United States breached a duty it owed to park patrons at the Jackson Hill area was sufficiently supported by this evidence.

## III

■ The district court permitted Martinez to proceed on a claim whose *ad damnum* clause was amended to exceed the amount sought in his administrative claim. This is permissible only when there is either newly discovered evidence not reasonably discoverable when the claim was presented to the agency or allegation and proof of intervening facts relating to the amount of the claim. 28 U.S.C. § 2675(b). Martinez offered three grounds for amending his claim. The first of those grounds—

that his attorney did not, at the time the administrative claim was filed, have adequate familiarity with the plaintiff's injury and the relevant law—was properly rejected by the district court. The second ground—that unforeseeable medical developments, which will enhance the plaintiff's lifespan and medical expenses, occurred after the filing of the administrative claim—was rejected for lack of proof. The district court, however, accepted the plaintiff's contention that an en banc decision of this court, which clarified the effect of inflation on damage awards under federal substantive law, was an "intervening fact" within the meaning of § 2675(b). We conclude, to the contrary, that there was no change in the applicable law that could qualify as an "intervening fact."

Texas substantive law, including the elements of damages, applies here. 28 U.S.C. § 1346(b). Texas law has long held that inflation can be considered in setting damages in personal injury cases. *See Weakley v. Fischbach & Moore, Inc.*, 515 F.2d 1260, 1267 (5th Cir.1975), and Texas cases cited therein. At the same time, there is a line of cases in our circuit holding that inflation is not to be considered when federal substantive law governs. We held in *Johnson v. Penrod Drilling Co.*, 510 F.2d 234 (5th Cir.) (en banc), *cert. denied*, 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975), that inflation was not to be considered in calculating damages under the Jones Act. In *Standefer v. United States*, 511 F.2d 101, 107 (5th Cir.1975), we applied *Penrod Drilling* to an FTCA case arising in Texas. In *Weakley*, however, we held that inflation was properly considered in a diversity case applying Texas tort law. In *Bryan v. John Bean Div. of FMC Corp.*, 566 F.2d 541, 551 n. 11 (5th Cir.1978), we stated again that "Texas law allows inflation to be considered as an element of damages." Then, in *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir.1982) (en banc), *modified on rehearing in other respects*, 722 F.2d 114 (5th Cir.1983) (en banc), *cert. denied sub nom. St. Paul Fire & Marine Ins. Co.*, — U.S. —, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984), we overruled *Penrod Drilling* and

concluded that inflation could be considered in Jones Act cases. Martinez argues that the amendment of his *ad damnum* clause was proper because, after that claim was filed and before he sought to amend his claim in the district court, we changed direction in *Culver*.

Assuming, without deciding, that a significant change in the law could in some circumstance be an "intervening fact" under § 2675(b), we reject Martinez's argument. We note first that the district court correctly and expressly looked to Texas law, which has at all relevant times held that inflation is properly considered in the calculation of tort damages. Texas law was not affected by *Culver*, just as it had not been affected by *Penrod Drilling*. It is true that *Standefer*, and a dictum in *Ferrero v. United States*, 603 F.2d 510, 514 (5th Cir.1979), could have caused some confusion in this circuit about the use of inflationary factors when calculating damages in Texas FTCA cases. There was, however, no change at all in Texas law during the critical period between the filing of the administrative claim and the amendment at issue here. In any event, the plaintiff presented no evidence indicating that his attorney relied on *Standefer* or *Ferrero* when filing the administrative claim. There has accordingly been no "allegation and proof of intervening facts, *relating to the amount of the claim.*" 28 U.S.C. § 2675(b) (emphasis added). We conclude that the district court erred in allowing Martinez to amend his claim.

## IV

Although Martinez's *ad damnum* clause should have been limited to $2 million, the amount of his administrative claim, he was allowed to prove damages of $4,496,128.34. The district court reduced this to $2,922,483.42 to reflect the plaintiff's 35% comparative negligence. We must decide whether the judgment should be reduced to $2 million (the amount claimed in the administrative proceeding) or to $1.3 million (65% of $2 million). So far as we are aware, this

question has never been squarely faced in any reported decision.

The FTCA provides, with two exceptions not applicable here, that a tort action against the United States "shall not be *instituted* for any sum in excess of the amount of the claim presented to the federal agency." 28 U.S.C. § 2675(b) (emphasis added). This provision will ordinarily operate to deny *recovery* of an amount in excess of the claim presented to the administrative agency. In a case like the one at bar, however, this simple result does not necessarily follow. Had the plaintiff been denied leave to amend his *ad damnum* clause upwards and had his proof of damages been limited to $2 million, his recovery would in turn have been limited to 65% of the $2 million damages he alleged and proved. If it was proper, however, to allow the plaintiff to prove his full actual damages, one could argue that he should be allowed to recover 65% of those damages or $2 million, whichever was less. We must therefore decide whether the phrase "shall not be instituted" in § 2675(b) merely precludes a recovery exceeding the amount of the administrative claim, or whether it also precludes a plaintiff from using proof of greater damages to "offset" the effects of a finding that his recovery should be reduced to reflect his own partial fault.

Our effort to decide between these approaches is made difficult by the fact that comparative fault principles were not generally employed when the FTCA was enacted in 1946: Congress almost certainly did not contemplate the dilemma that confronts us here today.[1] Furthermore, comparative fault doctrine has developed during an era in which pleadings are routinely amended to conform to the evidence presented. *See, e.g.,* Fed.R.Civ.P. 15(b). Consequently, cases dealing with problems analogous to the one presented here are necessarily rare, if they exist at all. We are required, then, to write on what is almost a clean slate and to decide the issue in accord with the statute's language, its purposes, and generally applicable principles of interpretation.[2]

Standing alone, the language of § 2675(b), which precludes an action from

---

**1.** The legislative history of the FTCA, which does not speak directly to the question at issue here, is compatible with either reading of the "shall not be instituted" language in § 2675(b). In summarizing what is now § 2675(b), the House Committee on the Judiciary said: "Suit may not be instituted upon a claim presented to an agency until it has been finally disposed of by the agency.... In any case, the suit *cannot be brought* for more than the amount of the claim presented to the agency, in the absence of intervening facts or newly discovered evidence." H.R.Rep. No. 1287, 79th Cong., 1st Sess. 5 (1945) (emphasis added). When the FTCA was amended in 1966 to expand the authority of federal agencies to settle tort claims without litigation, the "shall not be instituted" language in § 2675(b) was retained without comment. *See* S.Rep. No. 1327, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 2515–27.

**2.** In *Dickens v. United States,* 545 F.2d 886, 893 (5th Cir.1977), we said that the FTCA "does not prevent proof of damages in excess of the amount of the administrative claim" and that "[t]he amount of judgment against the Government being less than the amount of the administrative claim, we find no error in what was done here." In *Dickens,* the plaintiff had filed an administrative claim for $2.3 million and an action in federal court for the same amount. Actual damages of $2.5 million were proved at trial and judgment was entered for $1.25 million. The reduction to $1.25 million was required by the applicable substantive law, which held that when a plaintiff has settled with one of two joint tortfeasors, the release has "at least discharged one-half [the] damages" and that such a plaintiff can therefore not recover more than one-half the actual damages from the other tortfeasor. *See Palestine Contractors, Inc. v. Perkins,* 386 S.W.2d 764, 766 (Tex.1964) (quoting *Gattegno v. The Parisian,* 53 S.W.2d 1005, 1008 (Tex.Comm'n App.1932, holding approved)); *Palestine Contractors,* 386 S.W.2d at 773 (expressly endorsing the *Gattegno* formulation). In *Dickens,* therefore, proof of actual damages was relevant to the determination of the amount of damages that had been "discharged" by the release of the settling tortfeasor. As we pointed out, § 2675(b) "prevents *assertion of a claim and judgment* against the Government in excess of [the amount of the administrative claim]." 545 F.2d at 893 (emphasis added). Because Dickens' complaint alleged the same damages as the administrative claim and because the Texas joint-tortfeasor rule had automatic effects known to all parties in advance, we did not focus on the notice issue that is present in the case at bar and discussed *infra.*

being "instituted" for a sum greater than that sought in the mandatory administrative claim, could be read either to preclude recovery of a greater sum or to forbid using proof of a greater sum to enhance the recovery beyond what would be available in the absence of that proof. The manifest purpose of the sum certain requirements of § 2675 is to ensure that federal agencies charged with making an initial attempt to settle tort claims against the United States are given full notice of the government's potential liability. *See Caidin v. United States,* 564 F.2d 284, 287 (9th Cir.1977). *See generally Adams v. United States,* 615 F.2d 284, 288–90 (5th Cir.1980) (reviewing legislative history of 28 U.S.C. § 2675). If the provision is read to allow plaintiffs to prove damages in excess of the administrative claim, but to forbid the actual recovery to exceed the amount of the administrative claim, this purpose will be served. The government will at all relevant times be aware of its maximum possible exposure to liability and will be in a position to make intelligent settlement decisions. It is true that in cases like the one at bar, where the administrative agency may expect comparative negligence rules to operate and yet may be ignorant of the extent of the plaintiff's actual injuries, the agency could in theory underestimate the government's maximum *probable* exposure to liability. Even assuming that government agencies make such precise calculations about the risks of litigation, however, their calculations will be only marginally affected and only then in the relatively rare case in which a plaintiff initially underestimates the extent of his own damages.

We are acutely aware of the settled general principle that statutes partially waiving sovereign immunity must be strictly construed in favor of the sovereign and that they must not be enlarged beyond what the language requires. *See, e.g., Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983); *McMahon v. United States,* 342 U.S. 25, 27, 72 S.Ct. 17, 19, 96 L.Ed. 26 (1951); *Eastern Trans. Co. v. United States,* 272 U.S. 675, 47 S.Ct. 289, 71 L.Ed. 472 (1927).

The Supreme Court has specifically reminded us that the FTCA is a partial waiver of sovereign immunity and that courts should not take it upon themselves to extend that waiver beyond the intention of Congress. *United States v. Kubrick,* 444 U.S. 111, 117–18, 100 S.Ct. 352, 356–57, 62 L.Ed.2d 259 (1979); *accord Childers v. United States,* 442 F.2d 1299, 1303 (5th Cir.), *cert. denied,* 404 U.S. 857, 92 S.Ct. 104, 30 L.Ed.2d 99 (1971). The Supreme Court has also emphasized, however, that courts should not "assume the authority to narrow the waiver that Congress intended." *Kubrick,* 444 U.S. at 118, 100 S.Ct. at 357 (citation omitted).

Because Congress apparently never considered the question at hand, we must recur to the more general purposes of the settlement procedures in the FTCA: "to ease court congestion and avoid unnecessary litigation" *and* to provide "fair and equitable treatment of private individuals and claimants." S.Rep. No. 1327, 89th Cong., 2d Sess. 5–6 (quoting H.R.Rep. No. 1532, 89th Cong., 2d Sess.), *reprinted in* 1966 U.S.Code Cong. & Ad.News 2515–16. The FTCA already treats plaintiffs rather sternly by limiting their recovery to the amount of the administrative claim even when they can prove damages in excess of that amount. We do not believe that either the efficiency or the fairness of the settlement process would be enhanced by creating a rule imposing even harsher sanctions on some plaintiffs who inadvertently underestimate their damages when they file their administrative claim.

▪ Accordingly, we conclude that an FTCA "claim," *see* 28 U.S.C. §§ 1346(b), 2674, 2675(a), is the amount that a plaintiff seeks to recover from the government. Unless the "newly discovered evidence" or the "intervening facts" exception in 28 U.S.C. § 2675(b) is applicable, a plaintiff may not recover any sum in excess of the amount of the claim presented to the appropriate federal agency in conformance with 28 U.S.C. § 2675(a). A plaintiff will be free at trial to present proof of damages exceeding this amount; if he does so and if

comparative fault principles are applicable under the relevant substantive law, the plaintiff should recover either his *pro rata* share of his proven damages or the amount of his administrative claim, whichever is less.

In the case at bar, Martinez filed an administrative claim for $2 million, proved damages of $4,496,128.34 at trial, and was found to be 35% at fault for the accident, $4,496,128.34 reduced by 35% is $2,922,-483.42, which is more than the administra-tive claim. We therefore modify the judgment to provide that Martinez be awarded $2 million.

AFFIRMED AS MODIFIED.