Cynthia L. Huggins FAIRCHILD et al.,

v.

UNITED STATES of America.

Civ. A. No. 89–0423.

United States District Court,
W.D. Louisiana,
Shreveport Division.

July 25, 1991.

J. Patrick Hennessy, Peters, Ward, Bright & Hennessy, Shreveport, La., for plaintiffs.

U.S. Atty. Joseph S. Cage, Asst. U.S. Atty. John Broadwell, Dept. of Justice, Shreveport, La., for defendant.

## MEMORANDUM OPINION

STAGG, District Judge.

This is an action by Cynthia Fairchild and her son, Robin Fairchild, seeking damages for injuries sustained in a collision between an automobile being driven by Cynthia Fairchild and a cargo truck owned by the United States of America. Liability has been stipulated and the only issue remaining for the court is the amount of damages sustained by the plaintiffs. The following findings of fact and conclusions of law are based on the live testimony, deposition testimony and documentary exhibits adduced at trial.

Under the Federal Tort Claims Act (hereinafter "FTCA"), the government is liable for the negligence of its employees "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. In determining whether a private person would be liable, the court must look to the law of the state where the act or omission occurred. 28 U.S.C. § 1346(b). Because the accident occurred in Louisiana, the principles of Louisiana tort law, including the elements of damages, govern this case. *Crider v. United States*, 885 F.2d 294, 296 (5th Cir. 1989); *Martinez v. United States*, 780 F.2d 525, 528 (5th Cir.1986).

Under the FTCA, only those claims presented initially to the appropriate administrative agency are cognizable in a tort action against the United States. *Davis v. Marsh*, 807 F.2d 908, 911 (11th Cir.1987). 28 U.S.C. § 2675(b) provides that the suit

shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency, except where the increased amount is based upon newly discovered evidence not reasonably discoverable at the time of presenting the claim to the federal agency, or upon allegation and proof of intervening facts, relating to the amount of the claim.

Noncompliance with this provision deprives a claimant of federal court jurisdiction over that claim. *Davis, supra*, at 911.

On the date of the accident, Mrs. Fairchild sought treatment at Byrd Memorial Hospital in Leesville, Louisiana, and was diagnosed as suffering from a cervical strain and a broken tooth. Over the next several weeks, she sought additional treatment for tenderness of the neck, stiffness of the left knee and broken teeth. On March 19, 1987, her original attorney filed an administrative claim seeking $10,000 for property damage and $50,000 for personal injury.

It soon became obvious that Mrs. Fairchild had suffered damages that were not apparent at the time the administrative claim was filed, injuries that became physically apparent as well as injuries to her emotional and cognitive functions. On November 11, 1987, an administrative claim was filed seeking $10,000 in property damage and $1.2 million for personal injury, as well as $60,000 for plaintiff's son's consortium claim. On November 21, 1987, Mrs. Fairchild was admitted to Willis–Knighton Hospital after exhibiting numerous signs of psychosis.

As this court found in the Memorandum Ruling issued June 12, 1990, the plaintiffs could not have reasonably known of the severity of Mrs. Fairchild's injuries at the time of the filing of the administrative claims in this matter. Although the court reserved the right to reverse this position after full trial on the merits, a preponderance of the evidence demonstrated that the severity and permanence of Mrs. Fairchild's injuries could not have been known at the time the administrative claims were filed. The plaintiffs may seek damages beyond the amounts sought at the time of the administrative claims.

Cynthia Fairchild seeks economic damages in the form of past lost wages and past medical expenses, lost future wages and future medical expenses. In addition, plaintiff seeks general damages. Under Louisiana law, general damages are defined as "those which may not be fixed with any degree of pecuniary exactitude but which, instead, involved mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or lifestyle which cannot really be measured definitively in terms of money." *Boswell v. Roy O. Martin Lumber Co., Inc.*, 363 So.2d 506, 507 (La.1978).

Plaintiffs contend that Mrs. Fairchild suffered two distinct permanently disabling injuries. First is the injury she suffered to her left side, which includes cervical strain, bruising, gait problems, causalgia, sympathetic dystrophy and cracked teeth. The second injury—and the one that is more difficult fully to understand—relates to what the plaintiff contends is a closed head injury, which has caused devastating mental and emotional problems, including psychosis, short term memory deficit, executive function deficiencies, and the inability to deal with stress. Problems related to Mrs. Fairchild's alleged closed head injury include swelling of the brain, acute traumatic neuritis, post concussion syndrome, post traumatic stress disorder with an atypical psychosis, organic delusional depression, a chemical imbalance stemming from closed head injury, organic effective state with depression and delusional features, neurological damage to rigid sacral plexus with neurogenic changes in gait, and organic psychosis of a traumatic origin.

THE FACTS:

The parties stipulated that Cynthia Fairchild did not suffer from any abnormal mental or emotional condition or physical disease prior to her accident. Although she did not testify at trial, the facts as established at trial revealed that Mrs. Fairchild has changed significantly since her accident. The court must determine the reasons for these changes.

At the time of the accident, Cynthia Fairchild was a 28–year–old single mother with the custody and control of her minor son, Robert Fairchild. She had been successfully teaching first grade for five years; she was physically active and enjoyed jogging, having run competitively in high school; she was also emotionally normal.

Since the accident, Mrs. Fairchild was described by numerous individuals as a person who suffered serious emotional problems. She suffers from serious memory lapses; she tires frequently and sleeps most of the time. She has made few friends since the accident and is unable to handle any stress. Any stressors, including matters related to this trial, cause Mrs. Fairchild to hear voices and exhibit other types of psychotic behavior. She has required psychiatric hospitalization for depression and suicidal tendencies and must take anti-psychotic medication. She has been unable to continue teaching school and is totally and permanently disabled because of her emotional problems. Although controlled somewhat, stressors which are ordinary to other individuals result in auditory hallucination. Her anti-psychotic medication causes drowsiness which makes daily activities difficult; however, when she is taken off of these anti-psychotics, she exhibits symptoms of psychosis again. In the spring of 1989, Mrs. Fairchild was taken off of anti-psychotics so that she could have another child after marrying Kent Fairchild. The absence of anti-psychotic drugs, as well as the addi-

tional stress created by the childbirth, resulted in her worsened emotional state. She will not be able to have additional children as long as she is on anti-psychotic medication, and her emotional problems make additional childcare duties unrealistic. She is unable to care for either herself or her children. Her family plays a crucial role in the rearing of her 11–year–old son and infant.

All experts agree that these dramatic changes were caused by the accident. The experts only differ regarding the type of injury that Mrs. Fairchild has suffered and the cost of her treatment, not that her physical and emotional problems stem from the accident.

The defendants relied upon Dr. C. D'Souza, a board certified neurologist, who is also board eligible in psychiatry. The court accepted Dr. D'Souza's tender as an expert in neurology, but not psychiatry. In Dr. D'Souza's opinion, Mrs. Fairchild suffered from no organic brain damage. The factors upon which he based his opinion were the assumption that there was no loss of consciousness, the plaintiff exited her car by herself and data which indicated that neurological findings were within normal limits. Dr. D'Souza concluded that the length of the period of unconsciousness is one of the parameters used to determine the severity of a brain injury, and that unconsciousness for less than five minutes is known as "post-concussion syndrome," as opposed to an organic brain problem. Dr. D'Souza concluded that Mrs. Fairchild suffered from severe emotional difficulties that were caused by this accident, but determined that this did not result from an "organic insult" to the brain. Dr. D'Souza concluded that the plaintiff suffered from post-concussion syndrome, post-traumatic stress syndrome and orthopedic problems, but opined that brain injury was not documentable and not consistent with the information he examined.

The court is convinced that Mrs. Fairchild struck her head at the time of the accident, as evidenced by her broken teeth and the vehicle's broken windshield and steering wheel, as well as a temporary loss of consciousness. The court is also convinced that she has carried her burden of proof that her condition is permanent and totally disabling. Were this court to have agreed with Dr. D'Souza, however, and concluded that the plaintiff merely suffers from psychosis related to the accident, the court further concludes that plaintiff has nevertheless carried her burden of proving that this psychotic condition is permanent.

In convincing the court that she suffered from a permanent brain injury, plaintiff relied upon the testimony of William Bruce Jones, Ph.D., an expert in clinical neuropsychological testing and treatment as well as the deposition and report of Dr. Kenneth A. Gaddis. Both experts conducted numerous tests, concluding that Mrs. Fairchild suffered a traumatic brain injury. The court is convinced that their conclusions were supported by the evidence.

The court also agrees with the testimony of Dr. Joe Ben Hayes, a psychiatrist with experience diagnosing and treating individuals with post-traumatic stress disorder. Dr. Hayes concluded that the motor vehicle accident was the initial stimulus that resulted in post-traumatic stress syndrome, atypical psychotic disorder and organic psychosis of a traumatic nature. Dr. Hayes further concluded that Mrs. Fairchild suffered from depression. Dr. Hayes concluded that she needs to be monitored throughout her entire life and that she will suffer psychotic symptoms for the remainder of her life. Dr. Hayes also described Mrs. Fairchild's cognitive difficulties and her inability to assimilate information. He concluded that Cynthia Fairchild's inability to deal with any stressors rendered her totally disabled. In his opinion, plaintiff's continued teaching would lead to a continuation of depression and possible psychosis. In his further opinion—and an opinion which this court shares—the plaintiff suffered from post-traumatic stress disorder, atypical psychosis caused by a combination stress as well as organic brain damage, both of which were caused by the accident.

In addition to the psychological problems associated with the accident, plaintiff also suffers from a permanent physical disabili-

ty. She consulted Dr. Anglin, an orthopedic surgeon, for a gait problem that has continued since the time of the accident. In Dr. Anglin's opinion, Mrs. Fairchild suffers from sympathetic dystrophy that more than likely was caused by a cerebral contusion. He considered her gait problem as permanent because it had not changed for two years. In his opinion, she needs exercise on a regular basis and needs monitoring on a non-regular basis. He also opined that her continued gait problems will result in back and possible arthritis problems. Dr. Anglin was unable to recommend a particular physical therapy regimen, but concluded that if she was unable to perform exercises on her own, then she would need to perform those exercises in a structured setting.

## DAMAGES:

■ The court is convinced that Mrs. Fairchild was rendered totally disabled by the accident, and is entitled to recover the present value of her lost future wages and benefits. The court heard opinions from both the plaintiff's and the defendant's experts regarding the valuation of future wages, and agrees with the plaintiff's experts' methodology and findings that plaintiff is entitled to $490,568 to fund future lost wages.

■ Plaintiff supplied a "life care plan," prepared by Dr. William Bruce Jones in which he exhaustively detailed the future medical care that he proposed for Mrs. Fairchild. Plaintiff's economic expert contends that the amount required today to fund future medical costs is $1,740,925. The court has carefully examined the life care plan and concludes that, although all damage awards are inherently speculative, Dr. Jones' opinion regarding future medical care is unreasonable. Dr. Jones' tender as an expert in rehabilitative counseling was rejected. Dr. Jones has merely attended two seminars on rehabilitative counseling and has done 25 other life care plans. This experience does not entitle him to be considered an expert. *See, e.g., Poland v. Beaird–Poulan,* 483 F.Supp. 1256 (W.D.La. 1980).

Although the court agrees with Dr. Jones' opinion regarding Mrs. Fairchild's condition, many of his recommendations regarding future treatments were unreasonable. For example, Dr. Jones recommended 2,496 sessions of recreational therapy. The court found Dr. Hayes' testimony more helpful; he opined that too much therapy could be detrimental. Dr. Anglin also concluded that physical therapy for Mrs. Fairchild's gait problem must be utilized as needed, but that he was unable to recommend a specific regimen. Plaintiff was unable to offer any support for the majority of Dr. Jones' recommendations.

It is the court's opinion that Mrs. Fairchild will have to undergo future therapy, including psychotherapy, physical therapy and neurological testing and treatment. The court concludes that Cynthia Fairchild is entitled to $150,000 to fund future medical treatment, and that—although this figure is significantly less than the amount urged by Dr. Jones—while significantly more than the amount argued by the defendant, the figure is reasonable and supported by the evidence.

It is obvious that Mrs. Fairchild has undergone significant mental and physical pain and suffering as the result of this accident. She is permanently disabled and suffers from brain damage, chronic depression and a muscular disorder. The court is convinced that these problems will remain with the plaintiff for the remainder of her life, but is also convinced that certain of the symptoms of her problems could be relieved by future therapy and the avoidance of unnecessary stressors. The court believes that a reasonable award of general damages is $250,000.

■ Mrs. Fairchild's son, Robbie, seeks consortium damages which, under Louisiana law, include "such pecuniary elements as loss of services and such nonpecuniary elements as love, companionship, affection, society ... comfort and solace." *Jinks v. Wright,* 520 So.2d 792, 795 (La.App. 3d Cir.1987). The court is convinced that Mrs. Fairchild's relationship with her son has been greatly affected by the accident. Again, assigning a monetary value to the

losses suffered by Robbie Fairchild is difficult. The court concludes, however, that $50,000 is appropriate for the son's consortium damage award.

Mrs. Fairchild is also entitled to past medical and related expenses of $40,642.81, and past lost wages of $45,555.31.

The plaintiff shall have ten (10) days from the date of this Memorandum Ruling in which to file a judgment consistent with these findings.

THUS DONE AND SIGNED.