# Supreme Court of Texas

No. 20-0923

Jesus Virlar, M.D. and GMG Health Systems Associates, P.A.,
a/k/a and d/b/a Gonzaba Medical Group,

*Petitioners,*

v.

Jo Ann Puente,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourth District of Texas

**Argued October 26, 2022**

JUSTICE BUSBY delivered the opinion of the Court.

Justice Huddle and Justice Young did not participate in the decision.

This medical malpractice case presents two principal questions about how to calculate the trial court's judgment: (1) whether to credit a settlement by a family member under Chapter 33 of the Civil Practice and Remedies Code; and (2) whether to order periodic payments of damages for future medical expenses under Chapter 74—the Texas Medical Liability Act (TMLA). The case involves a woman who suffered

brain injuries due to complications from gastric-bypass surgery; she and her minor daughter sued several defendants. After the daughter settled her claims for loss of services and loss of consortium against one defendant, the woman nonsuited her claims against that defendant. A jury later awarded the woman over $14 million against other defendants. These defendants sought to apply the daughter's settlement against the award and to pay the future damages in periodic payments. The trial court rejected these requests, and the court of appeals largely affirmed the judgment.

We hold that Chapter 33 required a credit for the daughter's settlement because her claims were for her mother's injury and that this result does not violate the Open Courts provision of the Texas Constitution. Further, on this record, the TMLA required the trial court to order that at least some of the future damages be paid periodically. We reverse the judgment in part and remand the case to the trial court for further proceedings to form a proper judgment on these issues of damages.

## BACKGROUND

In 2011, respondent Jo Ann Puente underwent "Roux-en-Y" gastric-bypass surgery performed by Dr. Nilesh Patel. After developing complications, Puente was admitted to intensive care at Metropolitan Methodist Hospital and ordered to take nothing by mouth. Petitioner Dr. Jesus Virlar, who was employed by petitioner GMG Health Systems Associates, P.A. ("Gonzaba"), assumed care for Puente. Evidence at trial showed that, although nurses noted Puente's difficulty walking, dizziness, continued vomiting, and "fixed gaze," Dr. Virlar did not read

2

their notes and was unaware of the symptoms. Dr. Virlar failed to order thiamine supplements, which Puente's expert witness testified led her to develop Wernicke's disease, a brain dysfunction associated with thiamine deficiency. Without the supplements, the disease progressed to a more debilitating brain disorder, Korsakoff's syndrome. Puente died while this appeal was pending.

Puente, her minor daughter, C.P., and her mother, Maria Esther Carr, sued Dr. Virlar, Gonzaba, Metropolitan Methodist Hospital, and other health care providers. Puente sought damages for physical pain, mental anguish, loss of earning capacity, and medical expenses. C.P. and Carr sought damages for loss of services and loss of consortium. Before trial, Carr and C.P. settled with all defendants except Dr. Virlar, Gonzaba, and Dr. Manuel Martinez, another physician employed by Gonzaba. Carr and C.P. nonsuited their remaining claims before trial and ceased to be parties. Puente settled with Dr. Patel and his associated defendants for $200,000 and nonsuited her claims against some parties with whom C.P. and Carr had settled. The only claims tried were Puente's claims against Dr. Virlar, Gonzaba, and Dr. Martinez.

The jury found Drs. Virlar and Patel negligent, and it found Dr. Virlar 60% responsible and Dr. Patel 40% responsible for Puente's injuries; it failed to find Dr. Martinez negligent. The jury awarded Puente $133,202 for past earnings lost, $888,420 for future earning capacity lost, and $13,262,874.86 for future medical expenses.

Dr. Virlar and Gonzaba moved for a new trial, contending that the trial court erred in two evidentiary rulings, but the court denied the

3

motion. Dr. Virlar and Gonzaba also moved for a settlement credit, arguing that C.P.'s $3.3 million settlement with Metropolitan Methodist Hospital should reduce Puente's recovery under Chapter 33. The trial court rejected that argument, granting a credit of only $200,000 for Puente's settlement with Dr. Patel. The trial court also denied Dr. Virlar and Gonzaba's motion for periodic payment of the award for future medical expenses. The judgment awarded Puente $14,109,349.02 in a lump sum.

The court of appeals, sitting en banc,[1] revised its opinion twice in response to motions for rehearing. The majority largely affirmed the judgment, reversing only to suggest an $8,000 remittitur of the award for lost future earning capacity for lack of evidence, which Puente accepted. 613 S.W.3d 652, 662, 682–85 (Tex. App.—San Antonio 2020).

In particular, the majority affirmed certain evidentiary rulings by the trial court, holding that it properly excluded one expert because his testimony was conclusory and that the trial court's allowance of questions relating to Dr. Virlar's loss of privileges was not harmful error. *Id.* at 667–682. The majority also affirmed the denial of a settlement credit, holding Chapter 33 unconstitutional as applied. *Id.* at 685–697. Finally, the majority affirmed the denial of periodic payments under our recent decision in *Regent Care of San Antonio, L.P. v. Detrick*, 610 S.W.3d 830 (Tex. 2020), holding that petitioners did not present sufficient evidence for the trial court to grant payments. 613 S.W.3d at

---

[1] Although the case was originally designated to be heard before a panel, the court of appeals, on its own motion, withdrew the case from the panel and heard the case en banc. No panel opinion was issued.

697–704. Chief Justice Marion and Justice Alvarez filed separate opinions that concurred with the majority on most issues but dissented as to the settlement credit, contending that its application would not result in an Open Courts violation. *Id.* at 704–06. Dr. Virlar and Gonzaba then filed a petition for review, which we granted.

ANALYSIS

Petitioners renew their challenge to the trial court's two evidentiary rulings, but they brief these issues last even though they would offer the greater relief of a new trial if successful. Because we conclude that overruling these issues does not require extended discussion, we likewise address them last.

We begin instead with the judgment-formation issues, first considering petitioners' contention that Chapter 33 requires a credit for the daughter's settlement and that its application does not violate the Texas Constitution. Next, we address whether the trial court was required on this record to order that at least some of the damages awarded for future medical expenses be paid periodically.

## I. Chapter 33 requires a credit for the daughter's settlement, which does not violate the Texas Constitution's Open Courts provision.

The court of appeals held that applying Chapter 33 to reduce Puente's damages in this case would be unconstitutional. Because Puente has not lost a common-law remedy, we conclude that the Open Courts provision has not been violated and that C.P.'s settlement should be credited against the judgment.

5

Although the court of appeals did not expressly address the question whether Chapter 33 requires a credit for the daughter's settlement of her claims for loss of Puente's consortium and services, that statutory question must be answered first under principles of constitutional avoidance. *Phillips v. McNeill*, 635 S.W.3d 620, 630 (Tex. 2021) (describing this rule as "not optional"). Based on petitioners' election, Chapter 33 reduces the damages a claimant may recover by "the sum of the dollar amount of all settlements." TEX. CIV. PRAC. & REM. CODE § 33.012(c). The statute includes in the definition of claimant "any person who is seeking . . . recovery of damages for the injury . . . of [another] person." *Id.* § 33.011(1)(B). Thus, we must determine whether C.P. was seeking to recover damages for the injury of Puente.

We have said that Chapter 33 is based on the one-satisfaction rule. *In re Xerox Corp.*, 555 S.W.3d 518, 523 (Tex. 2018). Puente argues that under the common-law one-satisfaction rule, her daughter's settlement would not be credited against Puente's damages. Our cases provide some support for that position. *See Whittlesey v. Miller*, 572 S.W.2d 665, 669 (Tex. 1978); *In re Labatt Food Servs., L.P.*, 279 S.W.3d 640, 646 (Tex. 2009). But we need not decide the question here because Chapter 33 is not limited to the one-satisfaction rule.

The plain text of the statute, and our precedents interpreting it, confirm that Chapter 33 credits go beyond the one-satisfaction rule's common-law contours. In a health care liability claim like this, Chapter 33 requires that the court "reduce the amount of damages to be recovered by the claimant" by an amount based on one of two methods elected by the defendant. TEX. CIV. PRAC. & REM. CODE § 33.012(c). The

6

defendant can choose a dollar-for-dollar credit for all settlements or a percentage credit equal to each settling person's percentage of responsibility. *Id.* Here, Gonzaba chose the dollar-for-dollar credit. "Claimant" is defined as

> a person seeking recovery of damages, including a plaintiff, counterclaimant, cross-claimant, or third-party plaintiff. In an action in which a party seeks recovery of damages for injury to another person, damage to the property of another person, death of another person, or other harm to another person, "claimant" includes: . . . (B) any person who is seeking, has sought, or could seek recovery of damages for the injury, harm, or death of that person or for the damage to the property of that person.

*Id.* § 33.011(1).

Although Chapter 33 serves to limit plaintiffs to a single recovery, it also "provides a framework for apportioning damages among tortfeasors responsible for 'causing or contributing to cause in any way the harm for which recovery of damages is sought.'" *Xerox*, 555 S.W.3d at 523 (quoting TEX. CIV. PRAC. & REM. CODE § 33.003(a)). Consistent with the "fundamental tort-law principle that liability generally arises only from one's own injury-causing conduct," *id.*, Chapter 33 ensures that a non-settling defendant is not "penalized for events over which it has no control." *Utts v. Short*, 81 S.W.3d 822, 829 (Tex. 2002). In particular, we have explained that Chapter 33's credit scheme prevents collusive settlements that would release one tortfeasor at the expense of another. *See Utts*, 81 S.W.3d at 829; *Drilex Sys., Inc. v. Flores*, 1 S.W.3d 112, 123 (Tex. 1999) ("Although such results may seem harsh, they are mandated by the statutory language.").

7

In *Drilex*, the plaintiff Jorge Flores was severely injured on the job, and he, his wife, and their three children sued several defendants. They settled with one defendant, and the jury awarded damages to each plaintiff in a trial against the remaining defendants. We held that even though the settlement had been apportioned among the various family-member plaintiffs, the remaining defendants were entitled to have the total damages reduced by the total amount of the settlement under Chapter 33. *See Drilex*, 1 S.W.3d at 122. As we explained, "[a]ll of the Flores family members are seeking recovery of damages for injury to Jorge. Thus, under the plain language of section 33.011(1), the term 'claimant' in section 33.012[] includes all of the family members." *Id.*

Similarly here, C.P.'s claims are for injury to her mother, Puente. C.P. sought damages for her loss of Puente's services and consortium, which resulted from the brain injuries to Puente. Thus, the claimant here is C.P. as well as Puente, and Chapter 33 requires that the total damages awarded to Puente be reduced by the dollar amount of C.P.'s settlement with Metropolitan Methodist Hospital: $3.3 million. *See id.*

The court of appeals majority nevertheless declined to apply Chapter 33, holding that doing so here would violate the Open Courts provision. 613 S.W.3d at 685–697. Because Chapter 33 does not withdraw a common-law remedy, we disagree.

The Open Courts provision of the Texas Constitution provides that "[a]ll courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. We have held that the Open Courts provision is implicated when the Legislature "withdraw[s]

8

common-law remedies for well established common-law causes of action." *Lebohm v. City of Galveston*, 275 S.W.2d 951, 955 (Tex. 1955). If the Legislature does so, then the statute is "sustained only when it is reasonable in substituting other remedies, or when it is [a] reasonable exercise of the police power in the interest of the general welfare." *Id.*; *accord Methodist Healthcare Sys. v. Rankin*, 307 S.W.3d 283, 286 (Tex. 2010); *Trinity River Auth. v. URS Consultants, Inc.-Tex.*, 889 S.W.2d 259, 262 (Tex. 1994).[2]

The court of appeals majority observed that Puente's claim for medical malpractice is a common-law negligence cause of action long recognized in Texas. 613 S.W.3d at 692. But the court did not address the first part of the *Lebohm* test: whether the remedy for Puente's claim was withdrawn. We hold that it was not.

As explained above, the legal principles addressing settlement credits and contribution—whether common-law or statutory—aim to vindicate the one-satisfaction rule and prevent collusion in settlements. Under common-law principles, Puente would recover *less* than she can recover under Chapter 33. Thus, the application of Chapter 33 here does not withdraw a remedy.

We held in *Palestine Contractors v. Perkins* that under the common law, a plaintiff who settled with one defendant could recover

---

[2] The court of appeals relied on *Lucas v. United States*, 757 S.W.2d 687 (Tex. 1988), where we stated the test somewhat differently. *Lucas* said that a statute restricting a cognizable common-law cause of action will not be upheld if the statute is "unreasonable or arbitrary when balanced against the purpose" of the statute. *Id.* at 690 (quoting *Sax v. Votteler*, 648 S.W.2d 661, 666 (Tex. 1983)). *Lucas* is inapplicable because, as explained below, Chapter 33 does not withdraw a common-law remedy.

only half of his damages against the remaining defendant. 386 S.W.2d 764, 773 (Tex. 1964); *see also Gattegno v. Parisian*, 53 S.W.2d 1005, 1007 (Tex. 1932); *cf. Owens–Corning Fiberglas Corp. v. Schmidt*, 935 S.W.2d 520, 523–24 (Tex. App.—Beaumont 1996, writ denied) (addressing differences between Chapter 33 and pro rata credit). Here, Puente released her claims against Dr. Patel for a $200,000 settlement, and she non-suited her claims against Metropolitan Methodist Hospital after it settled with C.P. Each of these events would trigger the *Palestine Contractors* rule, resulting in the jury's damage awards being cut in half to about $7 million. In comparison, Puente's recovery under Chapter 33 after crediting Metropolitan Methodist's settlement with C.P. would be approximately $10.8 million.

Texas common law later evolved from a strict pro rata rule to a percentage-contribution rule. *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 430 (Tex. 1984). Under this rule, a plaintiff could recover from the non-settling defendant only for its percentage of responsibility. *Id.*; *see Sky View at Las Palmas, LLC v. Mendez*, 555 S.W.3d 101, 107 n.7 (Tex. 2018) (discussing the history of contribution rules). Here, Gonzaba is vicariously responsible for the 60% responsibility the jury assigned to Dr. Virlar. Under the percentage-contribution rule, therefore, Puente would be able to recover only 60% of the damages awarded—about $8.5 million—from Gonzaba and Dr. Virlar.

Because the application of Chapter 33 gives Puente a greater recovery than she would have obtained under the common law, she has not lost a common-law remedy. Thus, we need not address in this case whether or to what extent a reduction in an award of common-law

10

damages due to statutory settlement credits would amount to withdrawal of a common-law remedy. In addition, because Puente has not shown a lost common-law remedy, we need not reach the second part of the *Lebohm* test.[3]

Accordingly, we reverse the court of appeals' judgment in part and hold that applying Chapter 33 to require a credit for C.P.'s settlement does not violate the Open Courts provision. On remand, the trial court should credit C.P.'s settlement against Puente's recovery in forming its judgment.[4]

## II.    On this record, the TMLA required the trial court to order periodic payments.

Petitioners next contend that the trial court abused its discretion by denying their request for periodic payments under Subchapter K of the TMLA. This subchapter provides that "[a]t the request of a defendant physician or health care provider or claimant, the court shall

---

[3] The Attorney General as amicus questions the correctness of the *Lebohm* line of cases. But the propriety of the *Lebohm* test has not been addressed by the parties, and declining to apply it here would not change the outcome of this case. *See Powell v. City of Houston*, 628 S.W.3d 838, 843 (Tex. 2021) ("Because no party has presented the issue raised by amici, it does not provide grounds for reversal."). Thus, we do not address the issue raised by the Attorney General and intimate no view on the matter.

[4] We agree with the court of appeals that Gonzaba sufficiently showed the settlement amount for the trial court to credit. 613 S.W.3d at 687; *see Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 927 (Tex. 1998) (requiring "only that the record show, in the settlement agreement or otherwise, the settlement credit amount"). Further, Puente offered a voluntary remittitur of $434,000 to cover any benefit that Puente obtained from C.P.'s settlement. Because Chapter 33 requires that the entire settlement amount be credited, Puente's offered remittitur does not cure the error.

11

order that [future damages for] medical, health care, or custodial services awarded in a health care liability claim be paid in whole or in part in periodic payments rather than by a lump-sum payment." TEX. CIV. PRAC. & REM. CODE § 74.503(a); *see id.* § 74.501(1) (clarifying that the statute applies to awards of future damages for such services). The award of at least partial periodic payments for future medical expenses is mandatory if a defendant meets the statutory prerequisites. *See id.* § 74.503(a).

Puente first asserts that Gonzaba and Dr. Virlar never pleaded for periodic payments and that making a motion after trial is too late. But much like a damages cap, Subchapter K is not an affirmative defense or an avoidance, so it need not be raised in a defendant's answer to apply. *See Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 155–57 (Tex. 2015) (holding statutory damages cap applies even if not originally pleaded). In addition, although the statute does not specify when a defendant must request periodic payments, it does provide that Subchapter K does not become applicable until a verdict is rendered exceeding $100,000. TEX. CIV. PRAC. & REM. CODE § 74.502.

Thus, when the defendant in *Regent Care* moved for periodic payments after trial, we recognized that the trial court has discretion to "receive additional evidence" as necessary to make the required findings. 610 S.W.3d at 837; *see* TEX. CIV. PRAC. & REM. CODE § 74.503 (requiring trial court to find dollar amount of periodic payments and specify interval and number of payments). And we recently explained that "[t]he *trial court's* duty to structure the jury award into periodic payments or a lump sum . . . means that the statute . . . does not require

12

the *jury* to make those specific determinations," though the court retains discretion to submit jury questions that may assist it in discharging its duty. *Columbia Valley Healthcare Sys., L.P. v. A.M.A. ex rel. Ramirez*, 654 S.W.3d 135, 142 (Tex. 2022). For these reasons, we hold that a defendant may request periodic payments post-trial and that petitioners' motion was timely.[5]

The next issue is financial responsibility. "As a condition to authorizing periodic payments of future damages, the court shall require a defendant who is not adequately insured to provide evidence of financial responsibility in an amount adequate to assure full payment of damages." TEX. CIV. PRAC. & REM. CODE § 74.505(a). Puente argues that Dr. Virlar cannot make this showing and cannot rely on Gonzaba's assurance. We disagree. Because Gonzaba is vicariously liable for the full damages awarded against Dr. Virlar, he can rely on Gonzaba's assurance of payment.

Puente points to the language of subsection (a), which requires that "*a* defendant . . . provide evidence of financial responsibility." *Id.* (emphasis added). In her view, this language mandates that *each* defendant show financial responsibility. Puente has a point in situations involving unrelated joint tortfeasors, but that point does not

---

[5] Puente asserts that allowing a motion for periodic payments to be made post-trial would violate her constitutional right to have a jury determine contested facts. We rejected this argument in *Columbia Valley*. 654 S.W.3d at 141. Here, the jury made the determination of liability and damages. The trial court is merely being asked to structure payment of the damages in a manner that must not be inconsistent with the jury verdict. *Regent Care*, 610 S.W.3d at 837–38. "The Constitution does not require a jury to . . . allocate *how* or *when* its award will be paid." *Columbia Valley*, 654 S.W.3d at 141.

13

apply in the case of vicarious liability. In a vicarious-liability situation, either defendant's evidence of financial responsibility is "adequate to assure full payment of damages" that both are equally responsible to pay. *Id.*

In addition, as the court of appeals recognized, following Puente's interpretation would lead to absurd results.[6] 613 S.W.3d at 701. Gonzaba is vicariously liable to pay the judgment to the same extent as its employee Dr. Virlar. Dr. Virlar was found 60% responsible, making him jointly and severally liable for the entire judgment. *See* TEX. CIV. PRAC. & REM. CODE § 33.013(b)(1). There is no dispute that Dr. Virlar was acting within the scope of his employment with Gonzaba and that Gonzaba is liable only as a result of vicarious liability; the jury was not asked to find that Gonzaba was independently negligent. The statute must apply in this scenario; otherwise, Puente could circumvent Gonzaba's request for periodic payments by immediately seeking to enforce the judgment against Dr. Virlar, which Gonzaba would be responsible to pay as his employer. We therefore hold that a defendant whose liability is submitted to the jury and a defendant who is vicariously liable for the same damages awarded against the submitted defendant constitute a single defendant for purposes of applying section 74.505(a).

This holding does not apply to unrelated joint tortfeasors. For example, if a jury finds two doctors negligent and one doctor 51% responsible and another 49% responsible for the plaintiff's harm, the

---

[6] Even Puente's counsel recognized the "ridiculous result" that comes from her interpretation when she first presented it to the trial court.

14

51% responsible doctor—even though he is jointly and severally liable for the entire judgment—cannot provide financial assurance for the 49% responsible doctor. But in this case, Gonzaba is only a vicariously liable defendant, not a defendant found responsible for its own tortious conduct. Under the doctrine of respondeat superior, the employer is liable co-extensively with its employee. The financial responsibility statute is designed to "assure full payment of damages awarded" against Dr. Virlar, TEX. CIV. PRAC. & REM. CODE § 74.505(a), and Gonzaba's assurance accomplishes that.

Alternatively, Puente contends that Gonzaba itself did not show sufficient financial responsibility to satisfy section 74.505(a). But Gonzaba provided a balance sheet and testimony from Melissa Keller, its controller. As discussed above, evidence of financial responsibility can properly be presented after trial. *See Regent Care*, 610 S.W.3d at 837. Keller testified about Gonzaba's balance sheet and the accounting process used to prepare it. As controller, she testified that the balance sheet showed Gonzaba could pay a $14 million judgment. We agree with the court of appeals that Gonzaba demonstrated financial responsibility under section 74.505. *See* 613 S.W.3d at 700.

Finally, Puente argues—and the court of appeals held—that Gonzaba did not provide sufficient evidence for the trial court to craft periodic payments that would comply with Chapter 74. *See id.* at 704. The record shows, however, that the trial court was required to award at least some periodic payments.

"When a trial court orders periodic payments, it 'shall make a specific finding of the dollar amount of periodic payments that will

15

compensate the claimant for the future damages' and shall specify the amount, number, timing, and recipient of those payments in its judgment." *Regent Care*, 610 S.W.3d at 837 (quoting TEX. CIV. PRAC. & REM. CODE § 74.503(c)–(d)). The party requesting periodic payments must "identify for the trial court evidence regarding each of the findings required by section 74.503." *Id.* The trial court has "no discretion to craft its own award of damages inconsistent with the jury's verdict." *Id.* at 838; *see* TEX. CIV. PRAC. & REM. CODE § 74.503(c) (requiring the trial court to make a finding that the periodic payments "will compensate the claimant for the future damages").

The trial court considered petitioners' request for periodic payments at two post-verdict hearings. Initially, petitioners requested that the trial court simply divide the amount of damages the jury awarded for future medical expenses—almost $13.3 million—by Puente's 31-year life expectancy and order that amount paid each year. This request was made without the benefit of our opinion in *Regent Care*, which held that such a proposal does not satisfy the requirements of section 74.503. As we explained, "simply ordering the jury's present-value damages award to be paid in periodic installments— whether in whole or in part—would be an abuse of discretion . . . because it would effectively 'double discount' the award, undercompensating [the plaintiff] for the expenses he would incur in each future period." *Regent Care*, 610 S.W.3d at 838.

As the hearings continued, however, the trial court was provided with evidence to support an award of some damages as periodic payments consistent with the jury's verdict. Puente requested that

16

costs, attorney's fees, and other expenditures to be incurred soon after trial be payable immediately. As we noted in *Regent Care*, these are factors a trial court may consider in deciding how much of an award should be payable in a lump sum upon judgment, with the remainder to be paid periodically. *Id.*; *see also Columbia Valley*, 654 S.W.3d at 143–44.

In addition, petitioners pointed the trial court to evidence it could use in structuring those periodic payments. The court had the life care plan of Dr. Keith Fairchild, Puente's expert at trial, which presented projected future costs for Puente's medical expenses each year over her 31-year life expectancy. The report also presented the present value of each year's costs using a discount rate of 2.03%—the only rate presented at trial or to the court. The trial court reasonably could have relied on the report's undiscounted projections of future costs in determining the dollar amount, timing, and number of the periodic payments that would compensate Puente for her future damages.

Puente points out that the jury did not award the entire amount in the life-care plan, but it cannot be the case that periodic payments are impossible to structure unless the jury awards every last penny of damages requested. Indeed, petitioners offered to use the balance of the award not payable at judgment to purchase an annuity with an interest rate sufficient to ensure that amounts paid in later years would grow to meet Puente's needs. The use of such annuities is contemplated by Chapter 74. *See* TEX. CIV. PRAC. & REM. CODE § 74.505(b)(1).

In sum, a trial court must order an award of future damages to be paid periodically in whole or in part when there is evidence to support

17

each of the findings required by section 74.503. *Regent Care*, 610 S.W.3d at 837. As we have explained, the trial court was presented with sufficient evidence here. Subchapter K "affords considerable discretion to the trial court in structuring periodic-payment awards," *Columbia Valley*, 654 S.W.3d at 143; it does not require such granular evidence that only one payment plan could be fashioned.

We note that this case presents a different issue than *Regent Care*. There, we pointed out that the division between the amount of the award payable in a lump sum upon judgment and the amount to be paid periodically must be founded in the record, and we addressed whether the trial court abused its discretion by not ordering a larger amount to be paid periodically. *Regent Care*, 610 S.W.3d at 837–38. Here, however, the trial court declined to order periodic payments at all. Thus, the question is simply whether there was evidence to support the findings required by section 74.503, thereby triggering the court's obligation to order periodic payments in whole or in part.

Because the record shows that the trial court could reasonably craft a payment plan, it was required to do so. TEX. CIV. PRAC. & REM. CODE § 74.503(a). The trial court's failure to award any periodic payments was error, and we reverse the portion of the judgment awarding all of the damages for future medical expenses in a lump sum.

Given that Puente died during the pendency of this appeal, the trial court should determine on remand how much of the award of future medical expenses she should have received in a lump sum and how much she was projected to incur periodically between the time of trial and her death. Puente's estate is entitled to recover those amounts.

18

Subchapter K provides that periodic payments of future medical expenses "terminate on the death of the recipient," *id.* § 74.506(b), so the court should not order petitioners to pay damages for any future medical expenses Puente was projected to incur after the date of her death. *See Columbia Valley*, 654 S.W.3d at 143.

## III. Petitioners' evidentiary challenges present no reversible error.

Finally, petitioners seek a new trial, arguing that the trial court erred by (1) excluding admissible expert testimony from Dr. Ralph Kuncl, Puente's expert witness, and (2) allowing irrelevant and prejudicial questioning of Dr. Virlar regarding his loss of hospital privileges (contrary to Rule of Evidence 403) and his treatment of another patient (contrary to Rule 404). Regarding the first issue, the court of appeals thoroughly reviewed Dr. Kuncl's testimony and held it was properly excluded as conclusory. 613 S.W.3d at 670–71. On the second, the court held that petitioners largely failed to preserve their complaints for appellate review, *id.* at 672–74, 676–680, and Puente argues here that the remaining complaints also were not preserved.

Having independently reviewed these issues, we conclude they present no error requiring reversal. The court of appeals' judgment is correct on these issues, and further discussion of them would not add to the jurisprudence of the state. *See Regent Care*, 610 S.W.3d at 839.

## CONCLUSION

We hold that the trial court improperly denied petitioners a credit for C.P.'s settlement and an award of periodic payments for future

19

medical expenses. We therefore reverse the judgment in part and remand to the trial court for further proceedings to form a proper judgment on these issues of damages.

_____

J. Brett Busby
Justice

**OPINION DELIVERED:** February 17, 2023